### FRANK WILLIS v. SANGER BROS.

Decided March 31, 1897.

**1. Continuance—Diligence.**

A continuance for the absence of witnesses is properly refused, for want of diligence, where the subpoena for such witnesses was issued at the instance of another defendant, who filed no answer.

**2. Same—Sufficiency of Application—Statement of Conclusions.**

An application for a continuance on account of absent witnesses which simply states that the applicant expects to prove by them that the debt sued on was fraudulent and simulated, without stating the facts expected to be proved by them, is insufficient.

**3. Evidence—Exclusion—Failure to Show Materiality.**

It was not error to refuse to admit books in evidence where, when they were tendered, there was no showing that material evidence was contained in them.

**4. Mortgage—Future Advances—Priority.**

A duly recorded mortgage on land for future advances takes priority over subsequent conveyances and incumbrances.

**5. Promissory Notes—Renewal—Effect on Lien.**

The validity of a mortgage lien is not affected by the renewal of the notes secured by the mortgage.

**6. Deed of Trust—Effect of Insufficient Provision for Notice of Sale.**

A provision in a deed of trust that only one notice of sale need be published for ten days does not affect the validity of such deed of trust, but only the power of sale sought to be conferred.

**7. Execution Sale—Credit on Judgment—Estoppel.**

An execution creditor who purchases the land at execution sale cannot claim that the judgment under which the sale was made is not entitled to a credit for the amount of his bid.

**8. Abstract of Judgment—Sufficiency.**

A judgment is not a lien on land, where the recorded abstract thereof merely shows the amount for which it was rendered, if the judgment was entitled to a credit from an execution sale at the time the abstract was filed. Revised Statutes, 1895, art. 3285.

APPEAL from Dallas. Tried below before Hon. EDWARD GRAY.

*W. L. McDonald*, for appellant.—1. In order to bind, by mortgage or deed of trust, subsequent creditors, encumbrancers or purchasers, for future advances made to a mortgagor, it is essential to the validity of such a provision therein that the limit within which the advances are to be made be pointed out with reasonable certainty, that is, so stated that the extent of the contemplated advances may, by the exercise of ordinary diligence, be ascertained. Rev. Stats., art. 1317; Gay v. McGuffin, 9 Texas, 501; Golden v. Patterson, 56 Texas, 629; 2 Thompson on Trials, sec. 2287.

2. The provision in the trust deed intended to cover all future indebtedness was invalid, illegal, and did not include the notes for $1300 and $2986.10. The trust deed was fatally defective, in that it only required one notice of sale published ten days in a paper in Dallas County. 15 Am. & Eng. Ency., Law, pp. 796, 797, 798, 799, and notes 1 and 2; Jones on Mortgages, secs. 364, 367, 368; Youngs v. Wilson, 24 Barb. (N. Y.), 570; North v. Belden, 13 Conn., 376; Robinson v. Williams, 22 N. Y., 380; Ward v. Cook, 17 N. J. Eq., 93; National Bank of Gennessee v. Whitney, 103 U. S., 99.

3. A substantial compliance with the statute as to recording and abstracting judgments in this State is sufficient to fix a judgment lien upon the judgment debtor's property, subject to execution, situated in the county where same is recorded, from the date of the filing of said abstract of judgment for record in said county. Rev. Stats., art. 3138 (6), 3155, et seq.; Cooke v. Avery, 147 U. S., 375; Willis v. Smith, 66 Texas, 31; Bank v. Cloud, 2 Texas Civ. App., 304; Openheimer v. Robinson, 87 Texas, 174; Burnett v. Cogkshatt, 2 Texas Civ. App., 304; Willis v. Sommerville, 3 Texas Civ. App., 512; Von Stein v. Triexler, 5 Texas Civ. App., 302; Blum v. Keyser, 8 Texas Civ. App., 675.

4. A court of equity will exercise its power, as between the original parties and their privies to a transaction and persons having notice thereof, to avoid and cancel a credit upon a judgment obtained through a mistake of fact as to the judgment debtor's title to the property sold under execution, especially where the creditor gained nothing of value thereby, and no innocent third party's rights are affected thereby, and the debtor lost nothing thereby. Townsend v. Smith, 20 Texas, 465; Burns v. Ledbetter, 56 Texas, 282; Strickland v. Hardwick, 77 Texas, 195; Bay v. Harnett, 58 Ia., 344; 15 Am. & Eng. Ency., Law, p. 645, and note 3, 679-681; 18 Am. & Eng. Ency., Law, p. 150, and notes, p. 160; Freeman on Judgments, sec. 478; Freeman on Executions, sec. 352; 2 Pomeroy's Eq. Jur., p. 350; 3 Pomeroy's Eq. Jur., p. 415.

*Coke & Coke*, for appellees.—1. Appellant's bill of exception No. 1 fails to show that the court erred in refusing to permit the witness to read the accounts in plaintiffs' books running through a period of ten years. There was nothing to indicate that said books would have shown any fact contrary to the testimony of the witnesses, and defendants did

not undertake to state that said books would show any fact tending to support their contention. It was purely a fishing expedition. 1 Sayles' Texas Civil Practice, sec. 537 and notes; McKay v. Overton, 65 Texas, 85.

2. The abstract of judgment showed that it was made out after a credit of $60 had been put upon the judgment, and failed to show such credit; and for this reason it did not create a lien upon the property. Evans v. Frisbie, 84 Texas, 343.

NEILL, ASSOCIATE JUSTICE—Sanger Bros. brought this suit against Henry Loeb on the promissory note for $2986.10, and to foreclose the deed of trust, mentioned in our first conclusion of fact. Frank Willis, the appellant, Thomas Griffin, W. L. McDonald, and H. I. Phillips were joined with Loeb as defendants in the suit, it being alleged that they claimed an interest in the land inferior to the lien asserted by the plaintiffs. Defendants Griffin and Phillips filed disclaimers, alleging that they claimed no interest in the premises, and defendants Loeb and McDonald did not answer.

On December 2, 1895, the sole remaining defendant Frank Willis, appellant, filed his amended answer, consisting of the following: (1) General exception. (2) General denial. (3) Special denial, that the note sued on was given in renewal of the two former notes given by Loeb to plaintiffs, that said notes show by the writing of plaintiffs on their face, to-wit: "Paid by new note, December 20, 1893," that same were paid by said last note, and plaintiffs are estopped from denying same, and that the lien in the deed of trust dated February 5, 1889, retained thereby to secure payment of the $1200 note, of even date therewith, had lapsed, become lost, and was not preserved, so as to secure said last note sued on herein. (4) That he is in possession, and is the legal and equitable owner of the land in controversy in fee simple, and that his title is regular and superior to the alleged lien of plaintiffs. (5) That he purchased said land on December 13, 1894, from W. L. McDonald, for $2000, evidenced by his eight promissory notes, for $250 each, payable annually to the order of W. L. McDonald, running from one to eight years after date, which notes were secured by a deed of trust given by Willis to H. I. Phillips, trustee, and that said McDonald on same day executed and delivered to him a warranty deed, conveying said land in controversy. (6) That McDonald purchased said land from S. W. S. Duncan, on May 22, 1894, for a valuable consideration, receiving a deed therefor in due form, said Duncan having purchased same for a valuable consideration at a constable's sale thereof on August 2, 1893, under an execution issued on a valid judgment against said Loeb, receiving a deed in due form conveying to him all of Loeb's title to said land. (7) That Willis, defendant, purchased, for a valuable consideration, said land at a constable's sale thereof, on February 6, 1895, under an execution issued upon a valid judgment in the case of Philo Wilcox & Co. against Henry Loeb,

rendered in County Court of Dallas County on March 27, 1888, for $410.80, which said judgment at date of said sale was not dormant, and said constable executed and delivered to said defendant a deed in due and legal form, conveying all the title said Loeb had in said land, and foreclosed the judgment lien secured by the proper filing, abstracting and indexing of an abstract of said judgment in the office of the clerk of the County Court of Dallas County, Texas, on September 26, 1888. (8) That on December 20, 1894, Loeb sold the land to defendant Willis and Thomas Griffin, taking in payment their ten vendor's lien notes for $275 each, payable to the order of Henry Loeb from one to ten years thereafter, secured by deed of trust on said land, which notes Loeb indorsed and delivered to Sanger Bros. before maturity, in settlement and lieu of the old Loeb notes and trust deed herein sought to be enforced and foreclosed; that Loeb defrauded defendant Willis in selling said land to him at $1000 more than the price agreed on, and after all Loeb's title had been divested by executor's sale of said land; that plaintiffs either participated in or were th· beneficiaries of said fraud. (9) That Henry Loeb failed in business about eight or nine years since, in Dallas, Texas, and is now, and ever since said time has been, hopelessly insolvent, there being several judgments unsatisfied of record against him in Dallas County; that he is a neighbor Jew and has been for many years an intimate personal friend of plaintiffs, all of whom are of the "household of Israel," and that when Loeb executed said notes and deed of trust "he did not owe plaintiffs, Sanger Bros., a dollar on earth, but that all of said notes and deed of trust alleged in the petition were, and each, all and every one of them are and were, at said time alleged in said petition, executed for the sole object and purpose of defrauding said Loeb's creditors and preventing and hindering them in the enforcement of the collection of their just debts, were wholly and are absolutely null and void when made and executed as aforesaid, and were made without consideration." Said defendant prays for judgment canceling all said notes and trust deeds, as clouds on his title to said land, that he may go hence without day and recover his costs.

On April 27, 1896, plaintiffs filed, by way of reply to said answer, a supplemental petition, consisting of a general exception, general denial, and special plea that the recording of the judgment of Philo Wilcox & Co. against Henry Loeb was ineffectual to create a lien on Loeb's property, "for the reason that on or about June 15, 1888, execution was issued on said judgment and levied upon certain property of the said Loeb, and sale made thereunder on or about August 7, 1888, at which sale said property so levied upon sold for the sum of $60, which, after the payment of costs, put a cred.t upon said judgment of $44.15; that said credit was not shown in the abstract of said judgment thereafter made and attempted to be recorded in the office of the County Clerk of Dallas County, Texas."

Said defendant filed a supplemental answer, by way of replication to

plaintiff's supplemental petition, consisting of general and special exceptions, general denial, and special plea that the $60 bid at said execution sale of Loeb's property was bid by J. W. Thompson, attorney for Philo Wilcox & Co., under a mistake of fact as to the condition of Loeb's title thereto (it being then incumbered for twice its value); that it was a nominal bid, no money being paid by him or his client thereon.

Plaintiffs responded thereto by filing, on the same day, a second supplemental petition, consisting of a general exception and general denial.

The court overruled defendant's exceptions to plaintiffs' supplemental petition, to which defendant excepted; and sustained plaintiffs' general exception to said defendant's supplemental answer, to which he then excepted in open court.

Plaintiffs announced ready for trial, and said defendant announced not ready. Said defendant filed an application for a second continuance of the cause, which was overruled by the court, to which ruling said defendant excepted.

The case was tried before a jury, and verdict returned and judgment rendered in favor of Griffin and Phillips on their disclaimers, and in favor of appellees against Loeb for their debt, interest and attorney's fees, amounting to $4103.90, and against Loeb, Willis and McDonald for a foreclosure of lien on the land described in the deed of trust to pay said indebtedness, and in favor of Willis for the cancellation of the ten notes made by him to Loeb for $275 each. From this judgment this appeal is prosecuted by Willis alone.

*Conclusions of Fact.*—1. On February 5, 1889, Henry Loeb executed and delivered to Sanger Bros. a promissory note for $1200, due one year after date, payable to the order of said firm, with 10 per cent interest, and attorney's fees, if collected by suit. At the same time, and to secure the payment of said note, he executed and delivered a deed of trust to T. P. Barry, trustee, on the premises, to secure the same, which instrument contains the following provision: "And whereas, it is contemplated that said party of the first part [Henry Loeb], may hereafter become indebted to said parties of the third part [Sanger Bros.], in certain further sums of money, which said indebtedness accruing in future it is agreed shall be payable in Dallas, Texas, by whatever means the same shall accrue, and this conveyance is made for the security and enforcement of said present and future indebtedness."

Afterwards, on the 10th day of January, 1892, Loeb being indebted to appellees in the further sum of $1300, on that day executed to them his promissory note for that amount, payable to their order one day after date, with interest thereon at the rate of ten per cent per annum, with an additional ten per cent as attorney's fees, if collected by suit.

On December 20, 1893, there remained due on both of said notes the aggregate sum of $2986.10, for which Loeb then executed and delivered to Sanger Bros. his promissory note payable one year after date, with

interest from date at the rate of ten per cent per annum, wiith an addtional ten per cent as attorney's fee, if placed in the hands of an attorney for collection, or if collected by suit. This note was given as a renewal and extension of the two notes above described, on which notes were then written: "Paid by new note, December 20, 1892."

When the last note was given Loeb was actually indebted to Sanger Bros. in the amount for which it was executed, and such debt, or any part thereof, was not simulated, but was bona fide and subsisting. It was understood and agreed between appellees and Loeb, when this renewal note was executed, that it was in lieu of the two first notes, and should be, as they were, secured by the deed of trust in the same manner. The deed of trust referred to was duly acknowledged on the 6th day of February, 1889, was filed for record on the next day, and duly recorded on the 27th of that month.

2. Philo Wilcox & Co., a firm composed of Philo Wilcox and Frank Keys, on the 27th of March, 1888, recovered in the County Court of Dallas County a judgment against Henry Loeb for $460.80, with interest at the rate of eight per cent per annum, besides costs of suit. On June 15, 1888, an execution was issued on this judgment, and on the 29th of June, 1888, duly levied on 100 acres of land (not the land in controversy) in Dallas County, fully described in the return, and known as the "Hughes land," which, after being duly advertised, was on the 7th of August, 1888, by virtue of said execution, duly sold to Philo Wilcox for the sum of $60. On said execution, besides the return, is indorsed a receipt from the clerk for his costs, a statement of the cost of making sale, and a receipt from Philo Wilcox & Co. for $44.15, the balance of the $60 bid, less said costs, which receipt is signed by the attorney for plaintiffs in execution. As a matter of fact no money was paid by the bidder, except for the costs, the balance being credited on the execution.

On September 26, 1888, an abstract of said judgment in the proper form, containing all the essential statutory requisites, except that it showed that the entire judgment was still due, no credit being given for any part of the amount for which the "Hughes land" was sold under the execution above described, was duly filed, recorded and indexed in the office of the County Clerk of Dallas County. On June 15, 1888, prior to abstracting the judgment, an alias execution was issued thereon, and returned nulla bona.

On January 10, 1895, a pluries execution was issued on the judgment, and was on said day duly levied on the land in controversy, and the same was duly sold by virtue of the execution on the 5th day of February, 1895, at which sale the appellant, Frank Willis, became the purchaser for the sum of $50, and said property was duly conveyed to him by the constable of Dallas County on February, 7, 1895, on which day said constable's deed was duly and properly filed for record in the office of the County Clerk of Dallas County, Texas.

3. On May 30, 1892, S. W. S. Duncan recovered a judgment against

Henry Loeb in the Justice's Court of precinct No. 1, Dallas County, for $62, besides costs, which judgment was duly and regularly abstracted and abstract duly filed, recorded and indexed in the office of the County Clerk of Dallas County, on June 2, 1892; under which judgment levy was duly made upon the land in controversy, and the same sold under said judgment on the 2nd day of August, 1893, by the constable of precinct No. 1, at which sale Duncan became the purchaser for the price of $10, and the land was to him conveyed by the constable on the 2nd day of August, 1893, and the deed filed for record in the office of the County Clerk of Dallas County on August 7, 1893. Said judgment, execution and conveyance were in all respects regular. On May 22, 1894, S. W. S. Duncan conveyed the land by a quit claim deed, reciting a consideration of $25, to W. L. McDonald, which deed was on the same day filed for record in the proper records of Dallas County.

4. Henry Loeb, on the 20th of December, 1893, by his general warranty deed, reciting a consideration of ten notes for $275 each, due, one, two, three, four, five, six, seven, eight, nine, and ten years from date, conveyed the land to Frank Willis and Thomas Griffin. This deed was duly acknowledged and recorded in the office of the County Clerk of Dallas County on February 26, 1894.

5. On July 5, 1894, in an action of trespass to try title in the District Court of Dallas County, W. L. McDonald recovered judgment against Frank Willis and Thomas Griffin for the land in controversy; and on December 13, 1894, W. L. McDonald, by his general warranty deed of that date, which recites a consideration of one dollar and eight notes for $250 each, due, one, two, three, four, five, six, seven, and eight years from October 24, 1894, with interest from date at the rate of 10 per cent per annum, conveyed the land in controversy to Frank Willis, which deed, on the day of its date, was filed for record in the office of the County Clerk of Dallas County.

6. The ten notes recited in the deed from Loeb to appellant, and canceled by the judgment, were by Loeb left with appellees when he executed the note for $2986.10 described in our first conclusion, not as security for the debt, but with the understanding that, if they were paid, appellees would release their deed of trust.

*Conclusions of Law.*—1. There was no error in the court's overruling the appellant's application for a continuance. The subpoena for all the witnesses for whose testimony the continuance was asked, except J. W. Thompson and Alex Sanger (both of whom appeared and testified in the case), was not issued at the instance of appellant, but was for McDonald, and upon its face shows that the witnesses were commanded thereby "to appear before the District Court of the Forty-fourth Judicial District of Texas, on November 30, 1895, then to give evidence for the defendant W. L. McD., in a cause therein pending, in which Sanger Bros. are plaintiffs, and Henry Loeb et al. are defendants." No answer was filed by McDonald, and there was no issue

made by the pleadings, and the witnesses subpoenaed for him could have testified for or against him.    So, it is apparent that no diligence was used by appellant to procure the attendance of the witnesses.

Besides, if diligence had been shown, we do not think it appears from the application that the testimony would have been material.  The facts expected to be proved by the witnesses which would show or tend to show that the debt sued on was fraudulent and simulated should have been disclosed by the application.   It is not sufficient to state that he expected to prove that it was fraudulent, for this is merely a conclusion of the applicant.   Aside from this conclusion, all the other facts proposed to be shown, if proved, could not have affected the verdict.

2.   It is not shown by appellant's bill of exceptions that there was anything in the books of Sanger Bros., offered in evidence by the appellant, which would prove or tend to establish that the debt upon which Loeb was sued was fraudulent or fictitious, and there being no evidence or any circumstance showing such fraud or indicating that it would be disclosed by such books, the court did not err in refusing to allow appellant to consume its time by going into an examination of appellee's books, nor in stating in the presence of the jury that appellant had made no proof of fraud or want of considerations for the notes.   If the books contained evidence that would have been material on the issue of fraud, or upon any other issue, such evidence should have been indicated to the court when tendered, and, upon the failure of the court to allow it to be introduced, should have been incorporated in appellant's bill of exceptions.   It could then be determined whether or not the court erred.   As it is, no material or relevant evidence appears to have been excluded, and we cannot say that there was error when none is shown by the record.

3.   The rule is now well established that a recorded mortgage expressed to cover future advances has priority in all cases over subsequent conveyances and incumbrances.   "If the mortgage contains enough to show a contract between the parties that it is to stand as a security to the mortgagee for such indebtedness as may arise from the future dealings between the parties, it is sufficient to put a purchaser or incumbrancer on inquiry, and if he fails to make it, he is not entitled to protection as a bona fide purchaser.   Such a mortgage is considered good against subsequent incumbrances to the full amount of the advances provided for, or even verbally agreed for, and the mortgagee is held to have the right to rely upon it, and to make such advances without regard to what other incumbrances may afterwards be put upon the property."   Jones on Mortgages, sec. 373.

In Witczenski v. Everman, 51 Miss., 841, the Supreme Court of Mississippi, speaking through Mr. Justice Campbell says:  "A mortgage to secure future advances which on its face gives information as to the extent and purpose of the contract, so far as a purchaser or junior creditor may, by an inspection of the record, by ordinary diligence and common prudence, ascertain the extent of the incumbrance,

will prevail over the supervening claim of such purchaser or creditor as to all advances made by the mortgagee within the terms of such mortgage, whether made before or after the claim of such purchaser or creditor arose. It is not necessary for a mortgage for future advances to specify any particular or definite sum which it is to secure. It is not necessary for it to be so completely certain as to preclude the necessity of extraneous inquiry. If it contains enough to show a contract that it is to stand as a security to the mortgagee for such indebtedness as may arise from future dealings between the parties, it is sufficient to put a purchaser or incumbrancer on inquiry, and, if he fails to make it in the proper quarter, he cannot claim as a bona fide purchaser. If it gives information that it is to stand as security for all future indebtedness to accrue from the mortgagor to the mortgagee, a person examining the record is put upon inquiry as to the state of the dealing between the parties, and the amount of indebtedness covered by the mortgage, and is duly advised of the right of the mortgagee, by the terms of the mortgage, to hold the property as security to him for such indebtedness as may accrue to him. Thus informed, it is folly of one to buy the mortgaged property, or take a mortgage on it, or to give credit on it; and if he does so, his claim must be subordinated to the paramount right of the senior mortgagee, who, in securing himself by mortgage, and filing it for record as required by law, has advertised to the world his paramount claim on the property covered by his mortgage, and is entitled to advance money and extend credit according to the terms of his contract thus made with the mortgagor, who cannot complain, for such is his contract; and third persons dealing with him cannot complain, for they are affected with full notice, by the record, of what has been agreed on by the mortgagor and mortgagee."

In the case of Freiberg v. Magale, 70 Texas, 117, the mortgage was to secure a present indebtedness, as well as the payment of any other indebtedness that might thereafter accrue from the mortgagor to the mortgagee, by reason of the sale of merchandise or in any other manner. It was claimed that the mortgage could not secure future debts, and if it could, the future debts contemplated by the mortgage were to be of the same kind provided by the mortgage. It was held by the Supreme Court that: "A mortgage providing for the security of future debts puts persons dealing with the mortgagor in reference to the mortgaged property upon notice that such debts may exist and bind the property, and that they must inquire as to this fact, or purchase at their peril. The present mortgage provides for securing future indebtedness. We do not think that the character of this indebtedness was limited. It was contemplated that debts should accrue by reason of the sale of goods, but not from this cause alone. The mortgage expressly provides that indebtedness of any kind shall be secured by it. It then, to place the matter beyond doubt, provides for debts to accrue in any other manner than had been already stated." It was then held that a debt of the mortgagor to the mortgagees, which accrued on account of the latter

having agreed to pay for the former's benefit an amount due by him on a policy of insurance, and another for rent the mortgagees had assumed to pay for him, was such an indebtedness as was contemplated in the mortgage, and that one who bought the mortgaged property with notice of the indebtedness took subject to the incumbrance thus created in favor of the mortgagees.

Upon the authorities cited and quoted, we hold that the mortgage was valid as to the debt of $1300 which accrued after its execution, as well as to the indebtedness subsisting when the mortgage was given.

4. The renewal of the notes by the mortgagor did not effect the security. Jones on Mortgages, sec. 355. "No change in the form of indebtedness or in the mode or time of payment will discharge the mortgage. A mortgage secures a debt, and not the note, or other evidence of it. No change in the form of the evidence, or the mode or time of payment,—nothing short of an actual payment of the debt, or an express release,—will operate to discharge the mortgage." Jones on Mortgages, sec. 924. Therefore the mortgage was not affected by the mortgagor's giving the note for $2986.10, in lieu of the original notes, and writing on the original, "paid by new note."

Nor is there anything in appellant's proposition that the note sued on, being given for an antecedent indebtedness evidenced by two old notes, is without consideration and void. The proposition refutes itself. It is held in this State that even "the assignment of a negotiable note for the purpose of liquidating a pre-existence indebtedness is not out of the usual course of business in the transfer and assignment of commercial paper, and is for a valuable consideration." Blum v. Loggins, 53 Texas, 131.

5. That the deed of trust only required one notice of sale to be published ten days in Dallas County did not affect its validity, but only the power of sale sought to be conferred.

6. There was no error in the court's refusing to admit the testimony of J. W. Thompson, to the effect "that he, as attorney for Philo Wilcox & Co., bid in said land [the Hughes tract] for $60, and after paying court costs, $15.85, formally receipted the sheriff for the balance, $44.15; that he paid no other thing of value thereon; and that he and his clients were mistaken as to the condition of Loeb's title to the land bid in by him for his clients at execution sale, and no bid would have been made if he had known the facts. That he learned soon thereafter that the land bid in, at the time he made the bid, was incumbered by a deed of trust given previously by Loeb to Rose for $3000, or over twice the land's worth. That his clients had never got a cent for said bid, and could not—the trust deed having been foreclosed, and the land bought in by Rose for $1000."

Nor was there any error in the court's refusing to allow appellant to introduce in evidence a deed of trust made by Henry Loeb to I. E. Rose, trustee, dated February 28, 1888, conveying to him in trust the 100 acres of land known as the "Hughes land," to secure payment of two

notes for $1500 each, payable to W. B. Rose; nor the trustee's deed, dated November 20, 1890, conveying said 100 acres to W. B. Rose, default having been made in payment of the note.

The testimony of the witness, and the instruments offered, were immaterial and irrelevant to any issue in the case. When the land was sold at execution sale to Philo Wilcox on his bid of $60, as shown by our conclusions of fact, he became the owner thereof, subject to the Rose deed of trust, of which he had record notice, and, having the equity of redemption, Loeb was entitled to and did have a credit on the judgment of Philo Wilcox & Co. against him, under which the execution was issued by virtue of which the sale was made. A purchaser at execution sale acquires all the defendant's title, whatever it may be (Freeman on Executions, sec. 335), and takes subject to outstanding equities of which he had notice at the time of his purchase. Blankenship v. Douglas, 26 Texas, 228. The purchaser, where, as in this case, he is one of the plaintiffs in execution, holding such title, cannot be heard to say that the judgment under which the sale was made is not entitled to a credit to the amount of his bid, and no one else can say it for him.

7. In regard to the abstract of the judgment in the case of Philo Wilcox & Co, against Henry Loeb, the appellant requested the following special charges:

(1) "You are instructed that the abstract of the judgment in case of Philo Wilcox & Co. v. Henry Loeb, in County Court of Dallas County, introduced in evidence, and the record of same in Dallas County, Texas, was in substantial compliance with the laws of Texas, and was sufficient and effective to create a lien, upon the date of the filing and recording thereof, upon all the property of Henry Loeb then situated in Dallas County, Texas, and subject to execution, superior to the T. P. Barry trust deed, subsequently executed for Sanger Bros.' benefit; and you are further instructed that the constable's deed to Frank Willis, defendant, was sufficient to convey all the right, title and interest of Henry Loeb in said land to said Willis, and you will find your verdict for said defendant for the land in controversy."

(2) "If you believe from the evidence that the abstract of the judgment in case of Philo Wilcox & Co. v. Henry Loeb, filed and recorded in the county clerk's office in Dallas County, Texas, is in all respects indexed and abstracted in substantial compliance with the law, except that it does not show the exact amount due thereon at the time it was filed and abstracted in the county clerk's office, and if you believe from the evidence, that it contains enough information, although not full information, to put an ordinarily prudent man upon inquiry, which, if pursued with ordinary diligence, would have led to full information, you are instructed that such abstract of said judgment was effective to create a lien superior to plaintiffs' trust deed lien upon all the property of Henry Loeb situated in Dallas County, Texas, at said time and subject to execution, and that the constable's deed in evidence was sufficient

to and did convey all of Loeb's title to said land to Frank Willis, defendant; and, if you so believe, you will find your verdict in favor of said Willis, defendant."

There was no error in refusing to give these instructions. We have already seen that the amount bid by one of the plaintiffs in execution for the Hughes tract is a credit upon this judgment. The statute, among other things, provides that the abstract shall show "the amount for which the same was rendered and the amount still due upon the same." Revised Statutes of 1895, art. 3285. When the abstract in question was filed and recorded, the judgment was entitled to a credit to the amount that the Hughes tract was sold for under execution, and the amount then due was less than that sum, yet the abstract only shows the amount for which the judgment was rendered, and is therefore not a compliance with the statute, and is no lien on the land in controversy. Evans v. Frisbie, 84 Texas, 341. It was for the court, and not for the jury, to determine the legal effect of the abstract.

8. There is no statement under appellant's ninth and tenth assignments of error, and they will not be considered.

There is no error in the judgment, and it is affirmed.

*Affirmed.*

Writ of error refused.