## SOHIO PETROLEUM CO. et al. v. GUNTER et al.

### No. 2605.

Court of Civil Appeals of Texas. Eastland.

Oct. 17, 1947.

Grisham & King, of Abilene, for appellants.

Scarborough, Yates, Scarborough & Black, of Abilene, for appellees.

GRAY, Justice.

Appellees Loyd Gunter et al. filed this suit in the District Court of Jones County, Texas, against Sohio Petroleum Co. et al., in trespass to try title to the oil, gas and

other minerals in and under the east half of the west half of Section No. 34, Block No. 18, T & P Ry. Co. land in Jones County, Texas. The petition was in the usual statutory form and the defendants answered by pleas of not guilty. It was agreed that W. L. Gunter was the common source of title. The statement of facts contains no oral testimony and the case was submitted to the court without a jury on certain stipulations and recorded instruments.

From the agreed statement of facts, we learn that prior to February 11, 1925, W. L. Gunter was the fee-simple owner of the west half of said Section No. 34, Block 18, T & P Ry. Co. land in Jones County, Texas, containing 320 acres; that on said February 11, 1925, W. L. Gunter and wife executed and delivered to M. H. Gossett, trustee, for the Federal Land Bank of Houston, their deed of trust covering said 320 acres of land to secure the payment of a note for $5,200, to renew and extend the balance due, on the amortization plan, a certain note previously executed against said property and maturing January 1, 1932. Said deed of trust was duly placed on record in Jones County.

Thereafter, on April 26, 1928, said W. L. Gunter and wife executed and delivered to H. P. Lyons and A. A. Hammer their deed of conveyance of an undivided one-half interest in and to all of the oil, gas and other minerals in and under, and that may be produced, from the east half of the west half of said Section 34, Block 18, T & P Ry. Co. survey, containing 160 acres, more or less, and being the same land involved in this suit. While it is not clearly shown by the record, we understand that the defendants other than those named above were assignees of grantees H. P. Lyons and A. A. Hammer. The said grant was conditioned that in the event no well for the production of oil or gas be drilled upon said land during a period of ten years from the date of said deed, then the grant terminated and full title to the minerals should be reinvested in W. L. Gunter and wife, Julie Gunter, their heirs and assigns. In the agreed statement of facts, it is stipulated that a well for oil and gas was drilled upon the said tract of land under and by virtue of an oil and gas lease previously executed thereon,

to a depth of about 3100 feet, which depth was sufficient to test the Noodle Creek pay, then known in that area. The record is silent as to whether oil or gas was found in paying quantities, but we assume that said well was what is known as a dry hole.

Under date of May 20, 1941, the Federal Land Bank transferred and assigned to Miss Nannie Tompkins the unpaid balance of said indebtedness amounting to $4,087.61, and the deed of trust lien securing the payment of same. But the note evidencing said indebtedness was cancelled. However, a few days prior to said assignments, said W. L. Gunter and wife executed and delivered to said Miss Nannie Tompkins a new deed of trust to secure the payment of the indebtedness thus renewed and extended. The said transfer and assignment provided that said Miss Nannie Tompkins should be subrogated to all the rights, titles, equity and interest owned and held by said bank to secure the payment of the remaining indebtedness due it. The said transfer and assignment further assigned and transferred "all its rights, titles, equity, interest, and demands in and to said land by virtue of being the owner and holder of the unpaid balance of said indebtedness and the deed of trust lien securing the payment thereof; with the understanding, however, that note is this day cancelled, but the indebtedness in so far as the unpaid balance is concerned, is continued in full force and effect."

The new deed of trust was so executed by W. L. Gunter and wife to secure the payment of the indebtedness of $4,087.61, the renewal note was payable on demand with an interest rate until maturity at the rate of 8% per annum, payable annually on each May 12th. Said M. H. Gossett, original trustee of the Federal Land Bank, being deceased, said Miss Nannie Tompkins by proper instruments duly recorded, designated Davis Scarborough as substitute trustee of said original deed of trust, and he was also named as trustee in said second deed of trust.

Thereafter, on September 4, 1941, said Davis Scarborough, trustee, executed a trustee's deed to said property to said Miss Nannie Tompkins, conveying to her the said above mentioned 320 acres of land, said

deed reciting that default had been made and said land sold under the power of sale in said deed of trust. Plaintiffs in said suit, appellees here, purchased same from said Nannie Tompkins. On the trial, the court rendered judgment in favor of plaintiffs, from which the defendants perfected this appeal, and the sole question here presented is as to the validity of said sale, which was under the original deed of trust, and whether it foreclosed the oil, gas and other mineral interests previously owned by the defendants.

■ Appellants complain that their rights were jeopardized and violated by the execution of a new deed of trust, which changed the rate of interest to 8% per annum, provided for annual instead of semi-annual payments as in the original deed of trust and the principal made payable on demand. We again call attention to the fact that the foreclosure was under the original deed of trust and not under the new one. In oral argument before this court, appellants contended that their right to redeem before final sale was impaired. The mineral deed under which appellants hold does not confer any right of redemption. The oil and gas lease on the property at the date of said mineral deed did provide that lessee might redeem against an impending foreclosure. But if we concede that appellants, as the owners of an interest in the property, and independent of any express contractual provision, did have the right to pay off said indebtedness before said sale, we think they are in no position to complain. The said original deed of trust, in full force and effect on date of said mineral deed, and by which appellants are bound, provided in detail a method of ·foreclosure. The foreclosure as had was in strict conformity to said provisions. When the substitute trustee posted notices as required by said deed of trust and furnished the grantors in said deed of trust and debtors therein with proper notice, he met the requirements of said deed of trust and the law in such cases. Posting of said notices was notice to appellants. It is not intimated in the record that appellants ever tendered the amount of the unpaid balance of said debt, or that they went into any court seeking a temporary injunction to stop the sale. We conclude that, granting appellants had the right to redeem and to protect their interest, they wholly failed to do so.

■ In their contention that the sale of the property in controversy under the original deed of trust was void, appellants cite and rely upon only one case, to wit, Amicable Life Insurance Company v. Slovak, Tex.Civ.App., 217 S.W. 200, 202. We have carefully examined said Slovak case and it is very apparent that the holdings in said case are not controlling in this case, because the fact situation in said Slovak case was altogether different from that of the case at bar. Slovak and his wife had purchased two tracts of land in McLennan County, Texas, which became their homestead. Said tracts of land were purchased partly on credit for which they executed their vendor's lien notes in the sum of $2,500. Being unable to pay said notes at maturity, the Slovaks executed and delivered to Colonial & United States Mortgage Company Limited the vendor's lien note against said property in lieu of the original vendor's lien notes for $2,500, maturing February 1, 1917, and bearing interest at 8% per annum. In addition to being secured by the vendor's lien securing payment of the original notes, to which lien said mortgage company was subrogated, the Slovaks executed as additional security their deed of trust to Harrison Holt, as trustee. On December 31, 1915, Slovak and wife, executed and delivered to A. R. Roberts as trustee their deed of trust on said tracts of land to secure the payment of a note for $6,000 to Amicable Life Insurance Company. As an incident to said transaction, the Amicable Life Insurance Company paid off the said $2,500 note, which note and vendor's lien were duly transferred to it by said mortgage company. On September 18, 1918, Slovaks filed an amended petition in the District Court of said county, setting up their homestead right in the tracts of land involved, describing said two deeds of trust and alleging an agreement of the parties to the effect that the security held by Harrison Holt, first trustee, was merged and vested in the security in the deed of trust delivered to trustee Roberts. Other facts were pleaded including the sale of the property under the power in the deed of trust to said mortgage

company in February, 1917. There seems to have been a subsequent foreclosure by Amicable Life Insurance Company under its deed of trust and said insurance company because the purchaser of said property for $2,500, taking a trustee's deed for same. Without going further into detail as to said transactions and suit, it is apparent that two questions were involved in said lawsuit that do not appear in this suit; (a) there was a merger of two debts in said suit, one being the $2,500 of unpaid purchase money, and an additional loan of $3,500 by Amicable Life Insurance Company, and (b) the homestead question. This additional loan of $3,500 was not secured by any mechanic's or materialman's lien, nor did it include any purchase money. It was clearly an attempt by the parties to make a loan of $3,500 against a homestead without any basis on law.

The trial court in said case correctly held that there was no valid lien against said homestead tracts, except as to the $2,500 of unpaid puchase money. The court foreclosed the vendor's lien as to said amount and further granted a personal judgment against Slovak for the full amount of the debt. On appeal, the judgment of the trial court was affirmed.

In this case, there was no merger of two or more debts. Miss Nannie Tompkins purchased the unpaid indebtedness from the Federal Land Bank, together with the lien securing the payment of same. In the note which she took from W. L. Gunter and wife, and the new deed of trust, the indebtedness which she had purchased from the Federal Land Bank was not enlarged, neither did any homestead right appear in the matter. The original debt and lien securing it held by the Federal Land Bank were not extinguished, but were assigned and transferred to said Nannie Tompkins, together with all interest, rights and remedies provided for in the original deed of trust and with full subrogation of Nannie Tompkins to all the rights, interest and remedies held by the Land Bank.

Appellants quote from said Slovak case the following: "It is expressly recognized that, where equitable grounds exist, equity will keep alive the original mortgage to protect the second mortgagee, where he has advanced money to pay off a valid prior lien on homestead property; but this is an equitable right and lien to be enforced in a court of equity. Under our blended system of legal and equitable powers, this right may be enforced in any court of competent jurisdiction."

We concede that said quotation is a correct statement of the law under the facts in said Slovak case, but in this case the original mortgage lien was not permitted to lapse, and there had been no payment by the second mortgagee of any unpaid purchase money against a homestead. There was, therefore, in this case nothing to invoke the equitable power of a court. The rights of Miss Tompkins had been preserved by the assignment of the debt and lien by the land bank as well as by the provision for subrogation. The new deed of trust which Miss Tompkins took contains this conclusive provision, "This deed of trust is to take up and extend a deed of trust given to the Federal Land Bank of Houston, M. H. Gossett, Trustee by W. L. Gunter and wife, Julie Gunter, dated, February 11, 1925, and recorded in Vol. 38, Page 283, of the Deed of Trust Records of Jones County, Texas."

There is no sufficient analogy between said Slovak case and this case, but such a variance as to the facts that the holdings in said case are not applicable here and have no controlling or persuasive force in the disposition of this case. Furthermore, the rights of appellants were not affected by any change in the date of maturity of said new note or by change in the interest rate and maturity of accrued interest payments. We quote from 41 Corpus Juris, pages 806, 807 and 808 as follows:

"The execution of a new mortgage on the same property to secure the same debt covered by the old mortgage will release and discharge it, if intented by the parties to operate as a payment or satisfaction, or to cancel the one security and substitute the other, unless there are equitable circumstances entitling the mortgagee to claim the benefit of his earlier security. But this is entirely a question of intention, and it has been laid down as a general rule

that the original mortgage will not be discharged in the absence of a clear intention to that effect. Certainly it is not discharged if the purpose of the parties were merely to give and receive an additional or cumulative security, to correct an error in the first mortgage, to change its form, or to renew the loan or extend the time for its payment, in which case the lien of the original mortgage is simply continued without interruption, by and under the new mortgage, not only against the mortgagor but also as against intervening encumbrancers who are without countervailing equities.

"A mortgage is not discharged or its lien affected by any change in the form of the debt which it secures, or in the form of the evidence of it, so long as there is no agreement or mutual intention that the change shall operate as a payment nor any express release, as, for example, by the substitution of an indorsed note for a one name paper, or the change of securities, or by the taking of additional security; but a mortgage may be discharged by the mortgagee's acceptance of a new security for the same debt, not intended as cumulative or as a renewal or extention of the mortgage, but in substitution for it.

"Where a note secured by mortgage is taken up, at or before its maturity, and a new or renewal note substituted for it, the mortgage continues as security for the debt in its new form and there is no change in the rights or remedies of the mortgagee, unless there is an actual agreement or mutual intention of the parties that the mortgage shall be discharged, or the debt regarded as paid, by the new note, or that the new note shall not be included within the security of the mortgage; and if the debtor claims such an agreement or understanding, he must assume the burden of proving it. It makes no difference in the application of this rule that the old note was cancelled or marked 'paid' although of course it is otherwise where the mortgage is actually discharged of record."

In the early Texas case of Willis v. Sanger, 15 Tex.Civ.App. 655, 40 S.W. 229, 233, it was held by the court that renewal of the notes by the mortgagor in said case did not affect the security. In support of such holding, the court quotes with approval from Jones, Mortgages, Section 355, as follows: " 'No change in the form of indebtedness or in the mode of time of payment will discharge the mortgage. A mortgage secures a debt, and not the note or other evidence of it. No change in the form of the evidence, or the mode or time of payment, — nothing short of actual payment of the debt, or an express release, — will operate to discharge the mortgage.' * * * Therefore the mortgage was not affected by the mortgagor's giving the note for $2,986.10 in lieu of the original notes and writing on the originals paid by new note."

When the above-mentioned mineral deed was executed, the original deed of trust was on record in Jones County. The grantees in said mineral deed were charged with notice of, and bound by its every provision. Their deed was in all things subject to the provisions of said deed of trust. Said grantees were not parties to said deed of trust. They were charged with knowledge that the terms and conditions of said deed of trust might be changed; that said indebtedness and lien might be assigned and transferred, renewed and extended without consulting said grantees, who are simply the owners of an undivided one-half interest in the oil, gas and other minerals. Nothing was done which affected, enlarged or diminished their rights, which said mineral deed had conferred. Said original debt was not extinguished and the security remained the same. The foreclosure was as to the unpaid balance of said original debt and the original deed of trust lien which were transferred unimpaired to said Nannie Tompkins. Appellants are not in position to attack the said foreclosure nor to complain.

Our holding herein is not to be construed as holding that Miss Tompkins could not have foreclosed under the second deed of trust had she elected to do so.

The judgment of the trial court is affirmed.