SAN ANTONIO NATIONAL BANK v. JOHN R. BLOCKER ET AL.
No. 6565.

1. **Collateral Security.**—A collateral security can not be held or appropriated as a security for any debt or purpose save such as is covered by the agreement of the parties.

2. **Same.**—If a partnership deposit a collateral with stipulation that it may be held after payment of the debt it is intended to secure, as a collateral to secure any other debt against the partnership in the hands of the pledgee, it can not after the debt is paid be retained as a collateral to secure another debt due from one of the partners as principal and the other partner as security. For facts see opinion.

APPEAL from Travis. Tried below before Hon. A. S. Walker.
The opinion discloses the case.

*Peeler & Peeler* and *Denman & Franklin,* for appellant. —1. Where a surety has received security from the principal debtor to indemnify him against loss, equity creates a quasi trust in relation thereto in favor of the creditor until the debt is paid. The surety can not discharge or defeat such trust, and the creditor has a right to be subrogated to such security.

2. Where a firm borrows money from a bank for which they execute the partnership note, and to secure the payment of same deposit with the bank a note payable to the firm as collateral security, under a written contract in which it is agreed and understood that if recourse is had to the collateral any excess of collateral shall be applicable to any other note or claim held by said bank against them, under such a contract of

pledge, upon recourse being had, the bank could not apply any part of said collateral to the payment of an individual note of one member of said firm and upon which the other member, together with the other persons, was only a surety.

*Maxey & Fisher,* for appellee Caruthers.—1.   The court did not err in holding that under the contract of pledge embodied in the $20,000 note of J. R. & S. J. Blocker "recourse" to the collateral was had when the appellant collected of the obligors therein sufficient money to satisfy and discharge the said $20,000 note; and it is of no consequence whether the money was realized through efforts of the appellant or by voluntary payment on the part of the Days, the obligors therein.

2.   The contract of pledge in the $20,000 note of J. R. & S. J. Blocker did not limit and restrict the "recourse" stipulated for to a sale of the collateral.   Recourse to the collateral could as well be had by a collection thereon and an appropriation of collection to the satisfaction of the $20,000 note as by sale.   The right to sell the collateral obligation simply enlarged the remedy of the pledgee, who, by electing to collect and apply in satisfaction of the note for which it was primarily pledged, fulfilled the contractual condition by which the excess of the collateral—the balance still unpaid thereon—became unconditional security for any other note or claim held by appellant against J. R. & S. J. Blocker.

3.   That the $20,000 note was a partnership obligation of J. R. & S. J. Blocker and that the Day note was an asset of said partnership can not, we think, be material, the liability of the Blockers to appellant on both obligations, the $20,000 note and the note here sued on, being the same—joint and several.   Clearly this should be the rule where the proof, as here, discloses that the note sued on was the only note held by appellant against J. R. & S. J. Blocker on which they were bound jointly and severally, either as partners or otherwise, and where the evidence does not show that there were any firm creditors of J. R. & S. J. Blocker, or that any such were complaining.

4.   The plaintiff asserting in its pleadings that the Day note, pledged as collateral security, as stated, was not in fact the property of the Blockers, although they had the apparent title thereto and assumed to treat it as their property, it devolved upon plaintiff affirmatively to show, if such proof was competent, that such was the fact; and the court having found "that the testimony did not satisfactorily show that plaintiff had knowledge of any claim in the Day note by Murphy at the time it was pledged to plaintiff," the finding should be held equivalent to a finding against the alleged fact.   The court having found against the appellant on this issue of fact, its finding is entitled to the same consideration as a verdict, and should not be disturbed.   Ryan v. Railway, 65 Texas, 19; Sayles' Civ. Stats., rule 12, note 48, p. 683.

5.   The pleadings of both plaintiff and defendants and the evidence affirmatively establishing that the contract whereby the Day note was pledged as collateral security was in writing and embodied in the note for $20,000, the court should have sustained defendants' special exceptions to plaintiff's first supplemental petition setting up title to the Day or collateral note in Murphy, and also the objections urged by defendants in their first and second bills of exception to the admission of the testimony of George W. Brackenridge and S. J. Blocker proffered for the purpose of proving this issue.   Jones on Pledg., sec. 157; Perry v. Bigelow, 128 Mass., 129; Bombarger v. Morrow, 61 Texas, 421; Rhine v. Blake & Jenkins, 59 Texas, 243; Wooters v. Railway, 54 Texas, 294; Belcher v. Mulhall, 57 Texas, 17; Bruner v. Strong, 61 Texas, 555.

6.   Recourse to the collateral by collection from the obligors therein having been had by appellant agreeably to the terms of the contract of pledge, and the appellant, at the time of such recourse, holding against J. R. & S. J. Blocker no other claim upon which they were jointly liable, the unapplied balance of the collection thereon from the Days and the unpaid balance thereof, by the terms of the contract of pledge, thereupon stood as unconditional security for the payment of the note here sued on; and the appellant, with knowledge of the fact that appellee Carothers was but a surety interested in the security, having surrendered the same to the Blockers against Carothers' protest and to his prejudice, can not hold him upon his personal obligation as surety on the note sued on; and the court correctly so ruled.   Bank v. Young, 43 N. H., 457; Brandt on Sure., sec. 386; Manchester v. Bartlett, 13 Vt., 315; Baker v. Briggs, 8 Pick., 121; Geddis v. Hawk, 1 Watts, 295; Commonwealth v. Bruce, 22 Pa. St., 214; Bellas v. Miller, 8 Serg. & R., 452; Cullum v. Emanuel, 1 Ala., 23; Guild v. Butler, 127 Mass., 387; 1 Story Eq., sec. 324; Brandt on Sure., secs. 261, 370, 371; Murrell v. Scott, 51 Texas, 526; Bank v. Bruhn, 64 Texas, 571; Sublett v. McKinney, 19 Texas, 444.

7.   After recourse by appellant to the Day collateral for satisfaction of the $20,000 note, the balance of the collateral then unpaid constituted in its hands an additional security for the note in suit, untrammeled by conditions.   This security the appellant, with knowledge of Carothers's suretyship acquired before the surrender of the collateral, was bound to hold as trustee for Carothers' benefit as well as its own; and having surrendered it against his protest, he was released from liability on the note sued on to the extent of the value of the security surrendered.   Liddell v. Crain, 53 Texas, 555; Blum v. Loggins, 53 Texas, 121; Rawles v. Perkey, 50 Texas, 316; Bank v. Evans, 36 Texas, 595; Ross v. Smith, 19 Texas, 172; Greenoux v. Wheeler, 6 Texas, 515; Swift v. Tyson, 16 Peters, 1; Railway v. Bank, 102 U. S., 14.

8.   The rule which frees a surety from his obligation to the creditor where the creditor, without the consent of the surety, relinquishes or ren-

ders unavailable security held by him, rests upon equitable principles inherent in the relation of principal and surety, and not upon the contract between the surety and creditor. The rule is the same, whether the security be acquired at the time of the creation of the debt or afterwards, and whether it has been taken with or without the knowledge of the surety. Cullum v. Emanuel, 1 Ala., 23; Hadden v. Bishop, 5 R. I., 29; Brandt on Sure., secs. 370, 386; Gould v. Butler, 127 Mass., 389.

HENRY, ASSOCIATE JUSTICE.—The appellant instituted this suit to recover upon a promissory note for the sum of $22,500, dated the 18th day of August, 1885, and payable on the 15th day of August, 1886.

The note was payable to the order of W. B. Blocker, and by him endorsed to the San Antonio National Bank. It was a joint and several obligation, and was signed by the makers as follows: "J. R. Blocker," "J. S. Blocker," "E. Menielle," "W. S. Carothers."

It was alleged by defendants and proved that J. R. Blocker was the principal, and that all of the other makers were sureties only.

J. R. Blocker and S. J. Blocker were partners, and as such they owned a note against A. J., C. P., and J. M. Day for $42,482.25, which was dated the 18th day of June, 1886, and was made payable to the partners in their firm name of J. R. & S. J. Blocker on or before the 1st day of September, 1886.

Subsequent to the acquisition of the note in controversy by the San Antonio National Bank, it loaned to the firm of J. R. & S. J. Blocker $20,000, for which they executed to said bank by their firm name (J. R. & S. J. Blocker) their promissory note payable on the 1st day of September, 1886.

At the date of execution of said note, and for the purpose of securing its payment, the said firm of J. R. & S. J. Blocker deposited said "Day" note with the bank as collateral security, and expressed in their note to the bank the terms of agreement, as follows:

"$20,000 Gold.                    SAN ANTONIO, TEXAS, ——, 1886.

"September 1, 1886, after date, we promise to pay to the order of the San Antonio National Bank $20,000 dollars in United States gold coin of the present standard weight and fineness, for value received, negotiable and payable without defalcation or discount at the San Antonio National Bank, in the city of San Antonio, Texas, with interest at the rate of 12 per cent per annum, after maturity; having deposited in said San Antonio National Bank as collateral security a negotiable note executed by A. J. & C. M. Day and J. M. Day, payable to the order of J. R. & S. J. Blocker, September 1, 1886, with 10 per cent interest, at First National Bank of Austin, for $42,482.25, which we hereby authorize said bank, its president, cashier, or such other person as may be appointed by said bank, to sell and for us and in our name to transfer said collateral with or with-

out notice, at public or private sale, at the option of said bank, its president, cashier, or other person appointed, in case of the nonperformance of this promise; and at such sale said bank may become the purchaser of the whole or any portion of said property, applying the net proceeds (after deducting the expense of sale) to the payment of this note, including interest and special damages, if any, and accounting to us for the surplus, if any.  In case of deficiency, we promise to pay to said bank the amount thereof forthwith after such sale, with interest as above specified.  The present cash market value of the above collateral security is ——— dollars; and it is understood and agreed, should there be any depreciation in the value of said security prior to the maturity of this note, such an amount of additional security shall be furnished as will be satisfactory to said San Antonio National Bank; and should such additional security not be furnished within twenty-four hours after demand on us so to do, then and in that event said bank may proceed at once to sell as above specified the security herein named; and it is hereby agreed and understood that if recourse is had to the collateral, any excess of collaterals upon this note shall be applicable to any other note or claim held by said bank against us, J. R. & S. J. Blocker; and in case of exchange or addition to the collaterals above named, the provisions of this note shall extend to such new or additional collaterals.  Should we fail to meet this note promptly at maturity we further promise to pay the attorney fees for the cost of collection, to-wit, 10 per cent.

[Signed]                          "J. R. & S. J. BLOCKER."

Before the maturity of the $20,000 note the Blockers had become insolvent, and the appellee Carothers had demanded of appellant that it should hold the "Day" note as collateral for its payment.  On September 14, 1886, the makers of the "Day" note paid on their note to the First National Bank of San Antonio the full amount then due upon said $20,000 note, to which the payment was applied, and it was delivered to S. J. Blocker. On the same day, over the objection of Carothers, who was present, but with the consent of the other makers of the note now in controversy, the bank delivered to S. J. Blocker the "Day" note.

The defendants Carothers and Meneille by their answer claimed that by the terms of the contract between the bank and J. R. & S. J. Blocker the bank had the right to hold the balance of the "Day" note after the discharge of the $20,000 note as a security for the payment of the note in controversy, and that, having such right, it by the surrender of the collateral discharged them.

Judgment was rendered in favor of plaintiff against all of the defendants except Carothers, and in his favor discharging him.

We deem it unnecessary on this appeal to consider any question but the one raised by the following assignment:

"The court erred in holding that said collateral could be applied by

the plaintiff to the note herein sued on, when it appears from said contract of pledge that said collateral was deposited by a partnership to secure a partnership debt, and in no event could be applied under the terms of said pledge to any debt except one due by said partnership, and the note herein sued on is the individual note of J. R. Blocker and others, and not a partnership note of J. R. & S. J. Blocker."

The rule is well established that a pledge, or collateral, can not be held or used as a security for any debt or for any purpose save such as is covered by the agreement of the parties.    James' Appeal, 89 Pa. St., 56.

In Colebrooke on Collateral Securities, section 97, it is said: "In cases where negotiable securities have been pledged for the payment of a particular debt or obligation, the pledgee is not permitted in the absence of a special agreement to retain the same, after payment or discharge of such debt or obligation, as collateral security for other special or general indebtedness of the debtor."

Unquestionably if the bank had the right to hold the Day note as a security for the payment of the note in controversy it was its duty to the sureties to do so, and in that case its surrender of the collateral, without the consent of the sureties, would have had the effect of discharging them.

It is not claimed that the owners of the Day note consented to its being held as security for the payment of the note in controversy subsequent to the execution of the $20,000 note, and the only question for decision is, does the agreement contained in that obligation embrace this note?

We have no doubt but that such recourse was had to the collateral as to make it operative in favor of this note if it is included in the terms of the agreement.

The expression "any excess of collaterals upon this note shall be applicable to any other note or claim held by said bank against us, J. R. & S. J. Blocker," relates to such as might be held at the time when recourse was had, and is not limited to such as were held at the date of the instrument.

In other respects the language does not seem to require or to admit of construction.

The note was executed for a partnership debt.   The security given was a note executed to the partnership and made payable to it by the firm name.   The obligation was signed by the partners in their firm name, and in it the agreement was expressed and limited that the other debts for which the collateral could be used were to be claims held "against us," and to make it still more certain the word "us" was explained to apply to "J. R. & S. J. Blocker," the name of the firm.

The note in controversy was then owned by the bank.   If it had been intended to include it as an obligation to be secured by the collateral it would have been easy to particularly describe it; and if that was not done,

then, as it was an individual and not a partnership obligation, it would seem, if it was intended to include it, that the mention of other obligations to be embraced by the security would not have been limited to such as were expressed by the partnership name.

It is true that the note sued upon is the debt both of J. R. Blocker and S. J. Blocker, but it is the debt of one of them as principal and of the other as his surety. The agreement that the collateral might be applied to other firm debts due to the bank by J. R. & S. J. Blocker can not be held to apply to a debt due by one member only of the firm to the bank so as to authorize the sale of the firm's assets to discharge the individual debt.

The debt in controversy was as much the individual debt of J. R. Blocker, as between him and S. J. Blocker, as if he alone had been bound for it. The agreement of S. J. Blocker, as a member of the firm, that the collateral might be applied to other debts of the firm to which it belonged as an asset, and for which he was bound as a principal, is a very different thing from an agreement for its application to a debt for which the firm was not bound at all, and for which he was bound only as one of three sureties, with a right of recourse against his cosureties for two-thirds of the debt and ultimate recourse against the principal for the whole of it.

In the case of Jarvis v. Rogers, 15 Massachusetts, 397, it is said: "If a debtor obtain of his creditor a loan of money on pledge, upon an express agreement that the pledge shall be restored on the repayment of the loan, the creditor can not retain the pledge as security for a prior debt without violating the principles of good faith.

"Parties having a legal capacity to contract have a right to make such stipulations between themselves as they see fit, provided they do not contravene the law; and such stipulations are to be faithfully observed by the contracting parties. The law in such case will never make any new contract by implication."

Concluding that the contract with regard to the Day note did not authorize it to be held by appellant as collateral security for any but a firm debt of J. R. & S. J. Blocker, and it appearing, as the case is presented by the record before us, that the note in controversy was not a firm debt, we are of opinion that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Delivered April 25, 1890.