## H. W. WILLIAMS & CO. v. BELL et al. (No. 11974.)

Court of Civil Appeals of Texas. Fort Worth. May 9, 1928.

On Motion for Rehearing, July 7, 1928.

1. **Chattel mortgages** ⊜⇒22, 146—**Mortgage may be given to secure future advances, and it will be effective against subsequent purchasers and lienholders with notice.**

Valid chattel mortgage may be given to secure future advances, and same will be effective, not only against mortgagor, but as against subsequent purchasers and lienholders with notice thereof.

2. **Chattel mortgages** ⊜⇒52—**To cover future advances, chattel mortgage need not show amount of such indebtedness, or definitely fix time within which same accrues.**

In order to cover future advances, it is not necessary that chattel mortgage show amount of future indebtedness, or definitely fix time within which same shall accrue.

On Motion for Rehearing.

3. **Chattel mortgages** ⊜⇒110—**Where chattel mortgage showed parties' intention that it should operate to secure future indebtedness on open account, instrument should be given that effect.**

Where chattel mortgage on store fixtures showed on its face that parties intended that it

should operate as lien on property described to secure future indebtedness on open account, instrument should be given that effect, even though it may have lacked some of essential elements of a legal mortgage.

**4. Chattel mortgages ⊙⇒227—Where property was sold under another instrument executed by mortgagor, mortgagee had same right to claim lien on proceeds of sale to secure open account as though sale had been made under foreclosure proceedings.**

Where chattel mortgage provided that, if notes were not paid at maturity, the property covered by mortgage should be sold, and in that event any surplus remaining after payment of costs and expenses, at election of holder of note, might be applied on any other indebtedness owing by mortgagor to holder of notes, and property was sold by trustee under another instrument executed by mortgagor, mortgagee had same right to claim lien on proceeds of sale to secure its open account to same extent as if sale had been made under foreclosure proceedings instituted by mortgagee.

**5. Equity ⊙⇒56—Equity regards substance rather than form.**

Equity regards substance rather than form.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Interpleader suit by O. H. Bell, Jr., as trustee under an assignment for the benefit of the creditors of W. E. Vermillion, against H. W. Williams & Co. and another. From the judgment, defendant named appeals. Reversed and rendered.

Cantey, Hanger & McMahon and Warren Scarborough, all of Fort Worth, for appellant.

Samuels & Brown and Ross, Ross & Alexander, all of Fort Worth, for appellees.

DUNKLIN, J. W. E. Vermillion was engaged in business in the town of Alvord, and his store was designated as the Alvord Pharmacy. On July 2, 1924, he executed to H. W. Williams & Co., of Fort Worth, a chattel mortgage upon certain fixtures in his store to secure the payment of 18 certain promissory notes, bearing date June 25, 1924, each in the principal sum of $66.11, except the one last maturing, which was for $66.13. Those notes aggregated $1,190, and one of them fell due on each succeeding month following June 25, 1924. The mortgage contained this provision:

"Now, if I pay, or cause to be paid, said indebtedness at or before its maturity, then this obligation is to be null and void; but in case said notes are not paid at their maturity, or when all of part of said property is moved from where it is now located, or when it is legally seized, then, or any time thereafter, the holder thereof is hereby fully authorized to seize and take possession of all of said above-described property, or any part thereof, wherever the same may be found (hereby binding me to surrender up the same), and to sell, convey, and

deliver the said property, or cause the same to be done, at either public or private sale, with or without notice, at such place and on such terms as they may deem best, and the proceeds of such sale shall be applied, after deducting all costs, expenses, and attorney's fees, to the payment of said notes; the surplus, if any, shall be paid to me, or, at the election of the holder of said notes, shall be paid on any other liability or liabilities, whether as principal or otherwise, of mine in the hands of the holder of said notes, and if the proceeds of said sale shall not be sufficient to pay said notes I agree to be and remain liable for any deficiency."

Prior to the execution of the notes, Vermillion had purchased goods used in his business from H. W. Williams & Co., and the notes given covered the amounts due for such purchases. That mortgage was duly recorded in the chattel mortgage records of Wise county, in which Vermillion resided and transacted business. After the execution of that mortgage, H. W. Williams & Co. continued to sell goods on open account to Vermillion, and on September 29, 1925, there was due on said account the sum of $1,181.64. On the last-named date Vermillion executed a second chattel mortgage on the same fixtures that were covered by the mortgage theretofore given to H. W. Williams & Co. to the Cook Paint & Varnish Company, to secure the payment of a promissory note of even date with the mortgage, for the sum of $713.62.

On December 28, 1925, Vermillion executed an assignment of all his property for the benefit of his creditors, in which O. H. Bell, Jr., was named as trustee, and he was given power to sell the property and apply the proceeds thereof to the payment of the debts owing by Vermillion. Bell, as such trustee, instituted this suit in the nature of an interpleader, and made H. W. Williams & Co. and Cook Paint & Varnish Company defendants. In that pleading it was alleged that the fixtures covered by the two mortgages, which came into his hands as trustee, had been by him sold in accordance with the authority and directions contained in the deed of assignment, and he had realized therefrom the sum of $1,288.62. Against that amount he charged as a credit in his favor the sum of $209.55 as expenses for executing the trust, thus leaving in his hands a balance of $1,074.07, which he tendered into court, with the prayer that the same be awarded to the defendants as their interests might be determined by the court; both the chattel mortgages referred to above being referred to in the plaintiff's pleading.

Both of the defendants filed pleadings, each alleging the chattel mortgage in its favor, and each claiming superiority of its mortgage over that of the other defendant. Upon the trial of the case, which was before the court without a jury, it was agreed by all parties that the suit was properly instituted by the

plaintiff, and that he was entitled to the credit claimed by him as expenses for executing the trust, and that the sum of $1,074.07, which the plaintiff tendered into court, was the full amount with which he was chargeable as such trustee. This left the controversy between the two defendants over the $1,074.07 deposited in court, instead of the specific property covered by the two chattel mortgages.

On the date of the trial there was a balance of $366.40 due H. W. Williams & Co. on the notes secured by the first mortgage; said notes bearing interest at the rate of 8 per cent. per annum. From that balance the court deducted all costs incurred in the suit, including an attorney's fee of $125 in favor of plaintiff, for filing and prosecuting the interpleader, all of which was ordered to be paid out of the deposit in court, and the balance remaining of the $366.40 was ordered to be paid out of the deposit. The amount of the deposit in court was thus reduced to $707.67, which the court ordered to be paid over to the Cook Paint & Varnish Company. The unpaid balance of $134.77 of the Cook Paint & Varnish Company's claim and the amount of $1,248.60 due H. W. Williams & Co. on their open account were both established as unsecured claims of equal standing against Varmillion, with a decree that the trustee pay the same out of the general funds realized by him from the administration of the estate.

It thus appears that the court held that the mortgage of H. W. Williams & Co. for the notes therein described was superior to the mortgage of the Cook Paint & Varnish Company, and the correctness of this portion of the judgment is not challenged by the Cook Paint & Varnish Company. It also appears that the court held that the mortgage in favor of H. W. Williams & Co. did not cover the open account incurred by Vermillion with that company. H. W. Williams & Co. has prosecuted this appeal.

[1, 2] We have reached the conclusion that the court erred in holding that the chattel mortgage in favor of H. W. Williams & Co. was not sufficient to secure its open account, noted above. It is well settled that a valid mortgage can be given to secure the future advances, and that the same will be effective, not only against the mortgagor, but as against subsequent purchasers and lienholders with notice thereof. Freiberg v. Magale, 70 Tex. 116, 7 S. W. 684; Bullard v. Stewart, 46 Tex. Civ. App. 49, 102 S. W. 174; Groos v. Chittim (Tex. Civ. App.) 100 S. W. 1006. It is also the rule that, in order to cover such future advances, it is not necessary that the mortgage show the amount of such indebtedness, or to definitely fix the time within which the same shall accrue. Brunson v. Dawson State Bank (Tex. Civ. App.) 175 S. W. 438.

It is insisted by appellee that the mortgage did not create a lien for future advances by reason of the stipulation in the provision quoted above, to the effect that the mortgage should become void if the notes therein secured were paid at maturity. But the evidence showed that that contingency never happened. The further provision in the mortgage was that, if the notes were not paid at maturity, then the property covered by the mortgage should be sold to satisfy the notes, and in that event any surplus remaining after payment of the notes and expenses of executing the trust would at the election of the holder of the note be applied upon any other indebtedness owing by the mortgagor to the holder of the notes. That contingency did happen, and, according to the strict letter of the instrument, a lien was thus given upon such surplus for the open account of H. W. Williams & Co. Furthermore, aside from that question, it is clear from the language of the mortgage that the parties thereto intended that the same should constitute a lien for future advances, and that of itself was sufficient to constitute a valid mortgage between the parties and subsequent purchasers and lienholders with notice thereof. Willis v. Sanger, 15 Tex. Civ. App. 655, 40 S. W. 229; Groos v. Chittim (Tex. Civ. App.) 100 S. W. 1006, and authorities there cited.

At all events, as between the parties, that would constitute an equitable mortgage, enforceable against the mortgagor and against all parties having notice thereof. 41 Corpus Juris, pp. 300, 303, and 305; Waterman v. Silberberg, 67 Tex. 100, 2 S. W. 578; San Antonio Nat. Bank v. Blocker, 77 Tex. 73, 13 S. W. 961. The case of Coleman National Bank v. Cathey (Tex. Civ. App.) 185 S. W. 661, involved a mortgage to secure a $1,000 note, and provided for the sale of the property to satisfy the note if not paid at maturity. That mortgage contained this further provision:

"The surplus, if any, shall be paid to me, or, at the election of the holder of said note, shall be paid on any other liability or liabilities, whether as principal or otherwise, of mine in the hands of the holder of said note."

It was held that the mortgage was sufficient to cover other indebtedness incurred after the execution of the mortgage. The only distinguishing feature between that case and the present suit is that in that case the mortgage did not provide that it would become null and void upon the payment of the note secured. However, we do not believe that would make any material difference, since it clearly appears from the mortgage now under consideration that it was the intention of the parties that the surplus in the hands of the trustee should be applied to the satisfaction of the future advances, as well as to the satisfaction of the notes therein secured.

Several authorities cited by appellee, which

announce the general rule that a mortgage cannot be extended to cover indebtedness not designated by its terms, such as 41 Corpus Juris, pp. 556, 557, 563, Hall v. Read, 28 Tex. Civ. App. 18, 66 S. W. 809, City of Abilene v. Sayles (Tex. Com. App.) 295 S. W. 578, and San Antonio National Bank v. Blocker, 77 Tex. 73, 13 S. W. 961, furnish no aid to the appellee in the present suit, in view of the specific terms of the mortgage in favor of H. W. Williams & Co. The authorities so cited by appellee are invoked with special reference to the testimony of B. H. Lawrence, vice president of H. W. Williams & Co., to the effect that at the time the mortgage in favor of that company was executed it was understood between the parties thereto that the same would cover future advances made by that company to Vermillion. The point is made by appellee that such understanding between the parties would not affect appellee's right, since the same was not brought to appellee's notice. It does not appear that appellee objected to that testimony. However, the mortgage, without the aid of that testimony, was sufficient of itself to establish the right of appellant to claim the lien upon the property to cover its open account.

Upon the trial it was agreed by counsel for both parties that the open account of H. W. Williams & Co. had accrued at the time of the execution of the mortgage in favor of the Cook Paint & Varnish Company. The amounts which the trial court found to be due the respective defendants were agreed to by the parties. The parties also agreed to the amount with which the trustee was chargeable, together with the amount of the fees that should be allowed to his counsel for filing the suit and expenses for executing the trust. It was also proved beyond controversy that, at the time the Cook Paint & Varnish Company took their mortgage, that company, through its representative, A. T. Seymour, had both actual and constructive notice of the prior mortgage in favor of H. W. Williams & Co. Indeed, the mortgage in favor of the Cook Paint & Varnish Company expressly recites that there was then outstanding said prior mortgage.

For the reasons noted, and upon the undisputed facts recited above, the judgment of the trial court is reversed, and the judgment is here rendered as of date September 14, 1927, when the case was tried in the court below, as follows: The sum of $1,074.07, deposited by O. H. Bell, trustee, in court, is the full amount with which he is chargeable for the property covered by the mortgages in question, and, having so deposited the same subject to the orders of court, he is discharged from any future liability by reason of his administration of the said property. Out of said deposit the clerk of the trial court is ordered to pay over to Samuels & Brown, attorneys of record for said trustee, the sum of $125, which is a reasonable fee for representing the trustee in this suit. Out of the balance of said sum so deposited the clerk of the trial court will pay all the court costs incurred in the present suit, both in the trial court and in this court.

The amount due to H. W. Williams & Co. on September 14, 1927, on the notes secured by the mortgage in its favor, is the sum of $336.40, and the amount due the same company on open account is $1,248.60. The amount due on the note in favor of Cook Paint & Varnish Company is the sum of $842.44, the note bearing interest at the rate of 8 per cent. per annum. All of said items of indebtedness are hereby decreed to be valid debts against the property belonging to W. E. Vermillion, to be administered by O. H. Bell, trustee, under the trust deed executed to him and referred to above.

The balance of the funds on deposit in the trial court, after payment of the attorney's fee to Samuels & Brown, and the court costs as noted above, shall be by the clerk of the trial court paid over to H. W. Williams & Co. in the following order, to wit: To the satisfaction of the unpaid balance of the notes in favor of said company, and the remainder to be applied as a credit upon the balance due on said open account as a claim superior to the claim of Cook Paint & Varnish Company. The remaining unpaid balance of the open account of H. W. Williams & Co. and the entire claim of Cook Paint & Varnish Company are established as just claims against the property in the hands of said trustee, other than property covered by said mortgages, and the same are to be discharged by him as unsecured claims in the due course of the administration of the property of said W. E. Vermillion in accordance with the terms and stipulations of the trust deed executed by the latter in favor of the former. The unpaid balance of the open account of H. W. Williams & Co. shall draw interest at the rate of 6 per cent. per annum from and after September 14, 1927, and the amount due the Cook Paint & Varnish Company, already noted, shall bear interest from said date at the rate of 8 per cent. per annum.

### On Motion for Rehearing.

In its motion for rehearing, appellee Cook Paint & Varnish Company has cited many authorities to support its contention that the mortgage in favor of H. W. Williams & Co. was insufficient to secure its open account, as well as the notes therein described. We have carefully considered those authorities, and appellee's argument in connection therewith, but we shall not undertake to review them, since, for the most part, at least, the test applied to the instruments discussed was whether or not they were sufficient as legal mortgages, rather than whether or not they were sufficient in equity to constitute valid

liens as between the parties thereto and their privies in estate.

As pointed out in the opinion on original hearing, appellant's claim of a lien for future advances was established, if the instrument was sufficient to show an equitable lien to secure the open account, even though it should be held that it was insufficient to constitute a mortgage under the strict letter of the law. In 41 Corpus Juris, 303, the following is said:

"Where parties intend and attempt to create a mortgage on real property, but the instrument as drawn up cannot be recognized or enforced at law as a mortgage, because it is imperfect, or lacks some formality, form of words, or other requisites prescribed by the common law or a statute, or because it includes provisions foreign to a mortgage, it will be regarded nevertheless as an equitable mortgage and enforced as such by the courts of chancery, provided it shows the intention to charge a particular property as security for a' debt, and contains nothing impossible or contrary to law, and it is immaterial whether the defect in the instrument arose from a mistake of law or fact."

And on page 305 the following is said:

"As a general rule, any written contract entered into for the purpose of pledging property or some interest therein as security for a debt, which is informal or insufficient as a common-law or statutory mortgage, but which shows that it was the intention of the parties that it should operate as a charge on the property, will constitute an equitable mortgage and be enforced as such in a court of equity."

Indeed, there would be no occasion or necessity for the equity rule, if the instrument is sufficient as a legal mortgage. The equity rule is designed for the purpose of carrying out the intention of the parties, when that intention has not been expressed in terms sufficient to constitute a legal mortgage, and thus do justice between the parties.

[3] We believe it to be manifest, from the face of the mortgage to appellant, that the parties intended that it should operate as a lien upon the property described to secure the open account, and that the instruments should be given that effect, even though it should be held to lack some of the essential elements of a legal mortgage.

[4, 5] Criticism is made of the statement in the original opinion, to the effect that the contingency provided in the mortgage, upon which appellant would have the right to apply the balance of the proceeds of the sale of the property after payment of the notes secured to the open account, did happen. The gist of that criticism is that, since there was never a foreclosure sale by appellant, its right to apply any part of the proceeds to the open account never arose. It is true that there was never a foreclosure sale within the strict terms of the instrument. However, the property was sold by a trustee under another instrument executed by the mortgagor, and, since equity regards substance rather than form, we believe that appellant had the right to claim the lien upon the proceeds of sale to secure its open account to the same extent as if the sale had been made under foreclosure proceedings instituted by appellant itself.

It is further insisted that the decision in Coleman National Bank v. Cathey (Tex. Civ. App.) 185 S. W. 661, is distinguishable from the present suit in other respects than those pointed out in our original opinion, in that the language used in the mortgage there described expressly created a lien for future advances, in addition to the note specifically described. Be that as it may, we adhere to the conclusion already expressed that the mortgage in favor of appellant was sufficient in equity to secure the open account, and that it was effective as such, both against the mortgagor and the Cook Paint & Varnish Company, who had due notice thereof at the time it took the mortgage under which it claims.

The record shows an agreement of the parties to the suit that $109.37 of the amount deposited in court by O. H. Bell, Jr., trustee, was realized from the sale of property in his hands that was covered by a chattel mortgage in favor of the Cook Paint & Varnish Company, on which appellant H. W. Williams & Co. had no lien. The parties to the suit further agreed, upon the trial of the case in the lower court, that, in the event appellant H. W. Williams & Co. should finally establish its lien for its open account on the property described in its mortgage, then the fee of $125 allowed to the trustee's attorneys for filing the interpleader, should be taxed as costs of suit against the Cook Paint & Varnish Company, together with all other court costs.

Those two agreements of facts were overlooked by us upon original hearing, and the judgment rendered in this court will now be corrected, in order to give effect to those agreements in the following respects: $109.37 out of the total of $1,074.07 deposited in court is set aside to the Cook Paint & Varnish Company, to be applied upon its claim against the mortgagor W. E. Vermillion. The balance of $964.70 is set apart to appellant H. W. Williams & Co., to be applied upon the amounts decreed to be due it, as shown in original opinion, and it is ordered that that amount be paid over to appellant by the clerk of the trial court. The fee of $125 allowed Samuels & Brown for representing the trustee is taxed as costs of suit against the Cook Paint & Varnish Company, and the $109.37 set apart to that company, as above shown, is ordered to be paid over to said attorneys. For the balance of said fee of $15.63, Samuels & Brown shall have their execution against appellee Cook Paint & Varnish Company. All other costs of suit are taxed against the Cook Paint

& Varnish Campany, for which let execution issue.

As so reformed and corrected, the judgment heretofore rendered by this court is finally decreed, and the motions for rehearing by appellant and appellee are overruled.