## McCAMEY et al. v. FIRST NAT. BANK OF WICHITA FALLS.

### No. 1317.

Court of Civil Appeals of Texas. Eastland.
Oct. 5, 1934.

Rehearing Denied Nov. 9, 1934.

Chas. L. Morgan, of Fort Worth, Bonner, King & Dawson, of Wichita Falls, and Wm. N. Bonner and V. Childress, both of Houston, for appellants.

Kilgore & Rogers and J. T. Montgomery, all of Wichita Falls, for appellee.

FUNDERBURK, Justice.

At different times from June 15, 1926, to October 1, 1926, both dates inclusive, McCamey & Sheerin, a copartnership composed of James W. McCamey and John J. Sheerin, became indebted to the First National Bank of Wichita Falls, Tex. (hereinafter called "the bank"), as evidenced by notes as follows: June 15, 1926, due 90 days after date, $30,000; August 5, 1926, due 90 days after date, $30,000; September 8, 1926, due on demand, $10,000; October 1, 1926, due on demand, $7,500. Said notes, other than the $7,500 note, in the blank for listing collateral security stated the security to be as follows: $30,000 note of June 15th, "Assignment of approximately $150,000 worth of oil"; $30,000 note of August 5, "Assignment of oil runs." The $10,000 note of September 8th, "Assignment of contract with Empire Gas & Fuel Company." The $7,500 note of October 1, 1926, contained no mention of collateral security. At the time of the execution of the first note, Ethel Irene McCamey, wife of James W. McCamey, was the owner, as her separate property, of $7/64$ of all oil to be produced from certain leases in Wilbarger county, Tex., up to $162,500 worth, less a previous assignment

out of same of approximately $24,000 worth to Brit E. Cranfill. Mrs. John J. Sheerin was at the same time the owner of a like interest in the oil from the same leases. Two days after the date of the said first note, to wit, June 17, 1926, Mrs. McCamey joined by her husband, and Mrs. Sheerin joined by her husband, each executed separate transfers to said bank of oil runs out of the amount due to each in the sum of $30,000. The right of the bank to receive the proceeds of oil under each of said transfers was limited as follows: "From and after 7 o'clock a. m. June 15, 1926 until said First National Bank of Wichita Falls, Texas shall have received therefrom the full sum of $30,000." Again, on August 5, 1926, the same day of the execution of the second $30,000 note, Mrs. McCamey, joined by her husband, and Mrs. Sheerin, joined by her husband, executed each another separate transfer of $30,000 worth of the oil runs out of said interests. The transfer by Mrs. McCamey referred to the former transfer of $30,000 worth of oil, as well as the transfer to Brit E. Cranfill, and stated the subject-matter of the transfer as follows: "All and singular, all of our undivided seven sixty-fourths ($7/64$ths) of the oil produced and saved from the above described premises from and after seven o'clock A. M. June 15, 1926, until said First National Bank of Wichita Falls, Texas, shall have received therefrom the further and additional sum of Thirty Thousand Dollars ($30,000) in addition to the amount referred to in the assignment to the said Brit E. Cranfill, and in addition to the amount to be paid under the former assignment executed by the said James McCamey and Ethel McCamey to the First National Bank of Wichita Falls, Texas, as of date June 17, 1926, and above referred to."

Prior to January 25, 1927, the bank, under said assignments, had collected the proceeds from the sale of oil, and applied same in full payment of the two $30,000 notes, the $10,000 note, and the $7,500 note, with the exception of a balance of about $1,716.90 on the latter, which was applied on January 27, 1927. On January 25, 1927, James W. McCamey and wife, Mrs. James W. McCamey (Ethel Irene McCamey), executed to the bank their joint note for $52,250, due six months after date, with interest at 8 per cent. per annum from maturity, in consideration of the receipt by them of a $50,000 loan. At the same time, Mrs. McCamey, joined by her husband, executed to said bank another transfer of oil runs out of her said interest "after 7 o'clock

a. m. June 15, 1926." The transfer provided that said bank "shall have and receive therefrom all sums of money that may be due and owing to said bank *from us, either at this time incurred, or hereafter to be incurred,* and we do hereby set over, convey and assign unto said First National Bank of Wichita Falls, Texas, all and singular, the entire sum of money to be paid us out of oil from said property, together with all rights, titles, interests, and estate in and to the above described lands that we may be entitled to by virtue of our ownership of funds to be derived from oil produced therefrom. To have and to hold unto the First National Bank of Wichita Falls, Texas, its successors and assigns, forever, *so long as we, or either of us, are indebted to said First National Bank in any amount,"* etc. (Italics ours.) As the proceeds of oil covered by said assignment were received by the bank, the amounts were written on the back of the note, and at the maturity of the note were all credited on the principal, and a renewal note given to include the balance with the addition of interest to the maturity date of the renewal note. Several such renewals were made, each note providing for the payment of interest after maturity. The last renewal, dated April 6, 1932, with interest to maturity included, was for the principal sum of $5,998.80, due 90 days after date.

This suit was brought after all the transactions above stated, by Mrs. Ethel Irene Mc-Camey, joined pro forma by her husband, James W. McCamey, to recover of the bank as for conversion the amount of oil runs applied in payments of one-half each of the $10,000 note and $7,500 note, and $50 for interest on same, amounting to $8,800. There was also asserted a claim of $944.87 for the bank's failure and refusal to adjust interest charges upon payments made upon notes (by receipt of the oil runs) before maturity of the notes. Plaintiffs also claimed the sum of $2,616.54 by reason of interest charges in excess of 8 per cent., as provided in the note. The bank joined issue upon all plaintiffs' claims and asserted a cross-action, or counterclaim for a balance due on the last-named renewal note for the original sum of $5,998.-80, with interest and attorney's fees, and for a foreclosure of the lien upon the interest of Mrs. McCamey described in said assignments. The court upon a nonjury trial denied plaintiffs any recovery, and gave judgment for the bank upon said note for the balance due thereon, with interest and attorney's fees, amounting to $3,129.65, and decreed the foreclosure sought. From that judgment the plaintiffs have appealed.

■ The (supersedeas) appeal bond described only that part of the judgment which awarded the bank recovery against the plaintiffs. The bank contends that the judgment in so far as it denied the plaintiffs any recovery has not been appealed from, and that this court is, therefore, without jurisdiction to review that part of the judgment. The point is overruled. The law provides that only one final judgment shall be rendered in any cause, except where it is otherwise specially provided by law. R. S. 1925, art. 2211. The reason why an appeal bond must describe a judgment is to identify the particular judgment from which the appeal is taken. There is no requirement that an appeal bond shall describe each and every cause of action embraced in a single suit. It is the judgment which is required to be identified and not the one or more causes of action embraced in the suit, disposed of by the judgment. By such test we have no doubt the bond here is sufficient to fully clothe this court with jurisdiction.

The main question presented by this appeal is: Did the transfers of the proceeds of oil runs made by Mrs. McCamey (joined by her husband) to the bank, singly or all together, authorize the bank to apply same in discharge of the $7,500 note and the $10,000 note of the McCamey & Sheerin partnership? Appellants contend that the two transfers (bearing date respectively of June 17, 1926, and August 5, 1926) were made as collateral security for the payment of the two $30,000 notes given by the firm of McCamey & Sheerin to said bank, and that no authority was given to apply any part of such proceeds to other indebtedness owing by said firm to the bank. In other words, the theory of appellants' suit was that the transfers did not convey legal title to the oil, save only as it was appropriated, as collateral security, to the payment of the $30,000 notes. In the trial court the bank seems to have recognized it was without authority to apply such proceeds to the $7,500 and $10,000 notes, except as such authority was supplied by ratification or by the terms of the transfer of date January 25, 1927, given (as shown on its face) to secure primarily the individual note of McCamey and wife in the original sum of $52,-250. In this court the bank contends that the undisputed evidence showed that the two transfers of oil runs in the amount of $30,-000 each were absolute, and vested in the bank title to same, in trust for the partner-

ship of McCamey & Sheerin, and that it, having applied same to the discharge of the latter's indebtedness to the bank, is not liable herein.

■ We will notice this latter contention first. In our opinion it is untenable for more than one reason. Such theory has no basis in either the pleadings or the findings of fact by the trial judge upon which the judgment was predicated. The pleadings of both parties show that the transfers were regarded as having been made as a pledge of collateral security for the two $30,000 notes. The notes themselves, by their references to collateral security for their payment, afford at least some evidence that such was the character of the transfers. The evidence was amply sufficient to show that the transfers constituted only security for the payment of the notes. The testimony of Mrs. McCamey, relied upon by appellee, to the effect that she agreed to loan her husband $30,000 on two occasions for use in the partnership business of McCamey & Sheerin was not, as we see it, any evidence to the contrary. In a sense, same were, or may have been, loans as between Mrs. McCamey and her husband. As between Mrs. McCamey and the bank, the writings, as sufficiently explained by the testimony and the action of the parties, show the nature of the transaction to have been but a pledge of security for the payment of the notes, which notes were obligations of her husband and his partner, and not of herself. The bank by the first two transfers acquired no other right than to collect the proceeds of the oil runs, and under the limitations specified, apply same in discharge of the notes secured. If at any time the notes had been paid off with other money, the bank would have had no further right or interest in the proceeds of the oil runs. Whether McCamey would have had, under some loan agreement with his wife, is entirely beside any question here presented.

■■ It remains to consider whether the bank, by the transfer of oil runs made to secure primarily the $52,250 note, acquired thereby any additional rights available in defense of the plaintiffs' suit. In its brief, the bank admits that when the $52,250 note and accompanying transfer of oil runs were executed, proceeds of oil received under the previous transfers had already been applied on the $7,500 and $10,000 notes to the extent of one half of each, or a total sum of $8,750. It follows from what has already been said that if such was the case, it, in our opinion,

constituted a misappropriation and conversion, unless the subsequent contract operated as a ratification of such unauthorized act. We do not understand that the bank now seeks to sustain the judgment on the ground of such ratification, or even that new authority was given by the terms of the $52,250 note or the accompanying transfer. In its brief the bank says: "The evidence clearly discloses that no part of the funds transferred to the bank to secure the $52,250 obligation was ever applied to the payment of the $10,000 note or the $7,500 note. These notes had already been paid and satisfied out of the fund previously transferred to the bank for the benefit of McCamey and Sheerin. * * * Our contention now is that the bank had a right before this last transfer was made, and in the exercise of that right, had already applied the money secured under the two $30,000 transfers made by Mrs. McCamey to the satisfaction of the debts of McCamey and Sheerin." The trial judge found that Mrs. McCamey had no actual knowledge when she made the last transfer that any of the previous oil runs had been applied to the payment of the $10,000 note or $7,500 note. With this finding unchallenged, there was no substantial basis for a claim of ratification, if that were insisted upon, which is not the case. It would appear, therefore, upon the basis of admissions by the bank and its contention here that we are not really called upon to determine whether or not the last transfer added anything to the former transfers in giving authority to the bank to appropriate any of the oil runs to the payment of the $7,500 note and the $10,000 note.

However, regardless of the admissions of the bank, it would, perhaps, be our duty to affirm the judgment if it were found to be correct as based upon the undisputed evidence and unchallenged findings of the trial judge. As we read the evidence, $1,716.90 worth of oil runs were applied on the $7,500 note two days after the transfer given to secure the $52,250 note. The judgment in so far as it went against the plaintiffs is clearly based upon and dependent upon the following finding: "I find that the effect of the transfer of January 25, 1927, and of the provisions of the note of that date, was to pledge and authorize the bank to apply all amounts received by it from and after June 15, 1926 to the satisfaction and payment of all obligations of James W. McCamey to the bank." This conclusion, whether regarded as one of fact or of law, is duly challenged, and with it we are unable to agree. The indebtedness

primarily secured was a joint indebtedness of Mr. and Mrs. McCamey. The transfer discloses the purpose to secure such indebtedness as was at the time incurred by them, or which might thereafter be so incurred. With such purpose definitely expressed, we are of the opinion that the statement in the limitation upon the bank's right to have and hold the subject-matter of the transfer, viz., "so long as we, or either of us, are indebted to said the First National Bank in any amount," has reference to indebtedness of both, or either of the parties incurred at the time of the transaction, or thereafter to exist as therein specially provided for, and not to unmentioned indebtedness which McCamey may have owed as a member of the firm of McCamey & Sheerin, and in which Mrs. McCamey had no interest. We shall not enter upon any extended discussion of the rules of construction, the application of which lead us to this conclusion. The papers were all prepared by the bank. Blank forms were used and, therefore, controlling importance attaches to the written portions. In determining the existence of the right claimed by the bank, the rule of strict construction obtains against such right. The principles of construction are sufficiently enunciated in the authorities relied upon by the appellants upon this point which we cite as follows: 21 R. C. L. 653; 49 Corpus Juris, 941; 68 A. L. R. 912, note; San Antonio Nat. Bank v. Blocker, 77 Tex. 73, 13 S. W. 961; Thomson v. Findlater Hardware Co., 109 Tex. 235, 205 S. W. 831, 2 A. L. R. 1486; First Nat. Bank v. Southworth, 215 Ill. 640, 74 N. E. 771; Harris v. President, etc., of Franklin Bank, 77 Md. 423, 26 A. 523; National Bank of Kentucky v. Gallagher, 243 Ky. 740, 49 S. W.(2d) 1006; Torrance v. Third Nat. Bank (C. C. A.) 210 F. 806; In re Evans (C. C. A.) 238 F. 543.

We overrule 'appellants' contention whereby it is insisted that they should have judgment for interest charged on payments made by means of the oil runs before the due dates of the notes secured. The bank had the right to collect the oil runs, but it was not required to charge itself with same as against the indebtedness secured, until the due date of such indebtedness. The written contracts make no such provision. There is no finding of any binding agreement to such effect, and if there were, the evidence to support same, if any, would be in conflict with the written contracts and for that reason not provable.

The judgment should have awarded Mrs. McCamey recovery against the bank for $8,750, plus one-half of the amount paid as interest on the $10,000 and $7,500 notes, limited by the pleading to $50. In addition, there should be included interest at 6 per cent. per annum, calculated upon one-half of each amount applied to the principal and interest on said notes from the date of its application. We find such applications were made in the amounts and upon the dates as follows:

September 27, 1926, $3,294.79.
November 12, 1926, $1,705.21.
November 12, 1926, $38.54, on int.
November 12, 1926, $1,178.20.
November 12, 1926, $1,713.35.
December 14, 1926, $11.46, bal. $50.00 on int.
January 27, 1927, $858.45.

Total, $8,800, plus interest, less, however, the amount of principal, interest, and attorney's fees as found by the court upon the bank's note due by the plaintiffs.

Our order will therefore be that the judgment of the court below be reversed and that judgment be rendered in favor of the plaintiff Mrs. Ethel Irene McCamey in accordance with the above findings.

Reversed and rendered.