### MOORE v. STONE.
### No. 3194.

Court of Civil Appeals of Texas. El Paso.
May 16, 1935.

Rehearing Denied June 6, 1935.

McEntire, James & Shank, of Tyler, for appellant.

Cary M. Abney and M. M. O'Banion, both of Marshall, and T. A. Bath, of Henderson, for appellee.

WALTHALL, Justice.

W. P. Moore, Hunt Production Company, a corporation, N. G. Landrum, E. W. Jones, F. D. Jones, and Blackwell Oil & Gas Company, a corporation, as plaintiffs, brought this suit in the district court of Rusk county, against Samp Stone and J. S. Bridwell, as defendants, to recover the title and possession of the land described, and for damages stating same. The suit is in the form of trespass to try title.

Defendant Samp Stone answered by general denial, plea of not guilty, and pleas of five and ten years' statutes of limitations. Defendant Samp Stone further pleaded a cross-action against plaintiffs and against others not theretofore made parties in the suit, whose names and issues we think we need not state, and against codefendant J. S. Bridwell, doing business as Bridwell Oil Company. The cross-action is in the form of a suit in trespass to try title. Samp Stone, in his cross-action, specially pleaded title in himself by the statutes of limitation of five and ten years; pleaded that the lands involved in the suit are in the oil-producing area of Rusk county, are capable of producing oil in large and paying quantities, and has a large leasehold value as such; that it is surrounded by producing oil wells located within close proximity to said land, and that oil is being drained from said land by said wells located in close proximity thereto, and that by reason thereof the value of said land is lessened and its value will eventually be destroyed; that, in order to get permission from the railroad commission to drill a well upon said land pending litigation as to title, it is necessary that a receiver be appointed and that such receiver make application to the railroad com-

mission to drill such well; Samp Stone made application for the appointment of a receiver of the property involved, which was granted, and Stone Wells was appointed receiver. Samp Stone prays that the order appointing said receiver be continued in effect; that he have judgment against the plaintiffs and the other cross-defendants for title and possession of said land; that plaintiffs be enjoined from asserting claims to said land and the minerals thereunder, and from instituting suits to cloud the title, etc.

J. S. Bridwell answered, pleaded not guilty, general denial, title in himself by the five and ten years' statutes of limitation; as answer to the cross-action pleaded that Samp Stone, joined by his wife, Frankie Stone, as lessor, executed and delivered to C. M. Joiner, trustee, as lessee, an oil and gas lease covering said land, which was duly recorded; that said lease by mesne assignments, was conveyed to this defendant and is now the property of this defendant; that under the terms of said lease this defendant has drilled two wells now producing oil in paying quantities, and that Samp Stone and others interested in the ownership of the royalty accruing under said lease have been and are still receiving and accepting said royalties; that the railroad commission entered an order denying to this defendant a permit to drill a well on this land; and that without such permit no well can be drilled by this defendant or any other person or by a receiver; defendant asked the court to hear evidence on the matters pleaded, that said cross-action be dismissed as to this defendant, and, in the alternative, that the appointment of the receiver be abated.

W. P. Moore and other plaintiffs, answering Samp Stone's cross-action, make general denial, specially assert ownership of the land and all of the oil, gas, and other minerals thereunder; allege "plaintiffs own said lands and hold a good and regular chain of title thereto from the State of Texas down to these plaintiffs." They specially deny that Samp Stone has any character of title to said land or any part thereof, nor to the minerals thereunder; specially plead that the railroad commission has, by its order, denied defendant Samp Stone and his lessees a permit to drill an oil well on said land, from which order no appeal was prosecuted, and it is now a final judgment, and that by reason thereof defendant and his lessees are estopped from seeking relief from said order and judgment in any manner other than by such appeal as is allowed by law.

To the issues tendered by Moore, Samp Stone answered by a general denial.

The trial court in the judgment states that the suit was brought in trespass to try title by W. P. Moore and others, naming them, against Samp Stone and J. S. Bridwell; that the land involved in the suit is a part of the M. J. Prue survey in Rusk county, Tex., and describes the land; that the court overruled all demurrers to which the parties excepted; that a jury was selected to try the case, and returned a verdict that plaintiffs take nothing, and that defendants (Samp Stone and J. S. Bridwell) recover from the plaintiffs, naming them.

Judgment was entered that plaintiffs recover nothing, and that Samp Stone recover from W. P. Moore and others, naming them. The judgment then recites that inasmuch as before the jury retired, defendants Samp Stone, Saltmount Oil Corporation, Walter H. Gant, and J. S. Bridwell announced in open court that they had agreed upon a settlement of all the matters in controversy between said defendants, and asked that judgment be rendered in accordance with such agreement; judgment was entered as between said defendants "that the land described in the cross-action of Samp Stone is subject to and burdened with all the terms of the oil and gas lease now of record covering said tract and other lands, which lease is held and owned by J. S. Bridwell, and that subject to and burdened with the terms of said lease and minerals under said tract of land and the royalties payable under the terms of said lease are as follows, to-wit: Samp Stone is the owner of one-half of such minerals and royalties, and that defendant Walter H. Gant and Saltmount Oil Corporation each own an undivided one-fourth of such minerals and royalties, all of which are shown by the deeds recorded, this judgment shall not in any manner impair the title of J. S. Bridwell to said leasehold estate or the title of Walter H. Gant or Saltmount Oil Corporation to their respective minerals and royalty interests as stated, and as shown by the deed records; neither shall this decree be considered as an adjudication between Walter H. Gant, trustee, or as an individual, and defendant C. M. Joiner, trustee, or as an individual, and the Joiner Oil Corporation as to the ownership of the $\frac{1}{4}$th mineral and royalty interest adjudged to Walter H. Gant by the terms of this decree."

By the decree the receivership of Stone Wells was continued in his duties as such

until the further orders of the court in this case.

It was further ordered that defendants Samp Stone, J. S. Bridwell, Saltmount Oil Corporation, and Walter H. Gant, as an individual and as trustee, recover of plaintiffs all costs.

Plaintiffs' motion for a new trial was heard and overruled, to which they excepted and gave notice of appeal.

Plaintiff W. P. Moore alone prosecutes this appeal, reciting in the appeal bond that Samp Stone recovered judgment against W. F. Moore and other parties, naming them, for title and possession of land described in his cross-action, and makes his appeal bond payable alone to Samp Stone.

## Opinion.

Appellant presents three propositions, all submitting that it was error for the trial court to instruct the jury to return a verdict against appellant. Under the first proposition appellant submits that under the evidence as to his title he had the right to have the case submitted to the jury; under the second proposition appellant submits that appellee, Stone, failed to prove the continuity of possession for the length of time to make out his defense or to prove title in himself by limitation; under the third proposition appellant submits that the evidence tended to show that appellee, Stone, admitted title to the land to be in appellant; and admitted that he did not claim the land, and that other evidence such as to the rendition of the land for taxes and the payment of taxes, raised issues of fact as to adverse possession of the land.

Appellee, in his brief, insists that appellant has not perfected an appeal from the entire judgment in that the appeal is prosecuted only from the judgment obtained by appellee, Samp Stone, and from the judgment obtained by him on his cross-action.

The appeal bond indicates that the appeal is prosecuted only as to Stone and from the judgment on the cross-action, leaving the judgment obtained by Stone and Bridwell against appellant on appellant's suit undisturbed. Appellee makes the suggestion that under such condition of the record the judgment, if reversed and remanded, could avail appellant nothing, for the reason that the judgment against appellant on appellant's suit would be a final adjudication of appellant's title both as to Stone and especially as to Bridwell.

In the case of McCamey et al. v. First National Bank of Wichita Falls (Tex. Civ. App.) 75 S.W.(2d) 910, 912, in which the plaintiffs, Mrs. McCamey (joined pro forma by her husband) and another, sued the bank and in which the bank filed a counterclaim. From an adverse judgment, Mrs. McCamey and the other plaintiff prosecuted an appeal only as to the counterclaim. On the question whether the appeal from the counterclaim brought up the entire case for review, the Eastland court said: "The (supersedeas) appeal bond described only that part of the judgment which awarded the bank recovery against the plaintiffs. The bank contends that the judgment in so far as it denied the plaintiffs any recovery has not been appealed from, and that this court is, therefore, without jurisdiction to review that part of the judgment. The point is overruled."

The court then reviews the entire case and gives its reason for so doing. The Supreme Court granted a writ of error on an assignment of error complaining of a ruling of the Court of Civil Appeals with reference to that portion of the judgment not specially described in the appeal bond. We have before us only a notation made by the Supreme Court in Texas Syllabi, vol. 11, February 6, 1935.

Whatever the rule as to the jurisdiction of this court might finally be held to be, we are not sure that the case above referred to is fully analogous to the case at bar. We have concluded to review only the Samp Stone cross-action. If, under the evidence, appellee, Stone, should recover on his cross-action, it would be immaterial that appellant had the title to the land under his deeds.

The land claimed by Stone is described by metes and bounds, and consists of 12½ acres, off of the north end of the tract appellant and others sued to recover. The evidence on the whole case is voluminous and covers some 600 pages of the record, besides the maps and numerous exhibits.

Under appellant's second proposition, applying to Samp Stone's cross-action, appellant makes the contention that the evidence failed to show "the continuity of possession for the length of time required by law," to give him title under the statutes of limitation of five or ten years.

On the 16th day of February, 1916, R. G. Parish and wife conveyed to "Sam" Stone about eleven acres more or less, out of the M. J. Prue headright survey, "being all of

the land north of the Henderson and Tyler Road with the Overton and New Salem Road as the boundary line on the east, and bounded on the North by J. O. Tucker's land, and on the west by the old Ledford place." The land is further described as being in Rusk county, Tex., and about 110½ miles west of Henderson. The deed was acknowledged and recorded.

Stone testified: Had lived in Rusk county all his life; was 54 years old; bought the land from Parish; fenced it in the spring after buying it, 1916; have kept the land under fence continuously since that time; pastured the land since he owned it "until the oil field come" in 1931; kept the fences in good repair, sufficient to turn stock.

"Q. Have you used it (land) for that purpose all the time? A. Yes. Except the winter months for pasture.

"Q. Why didn't you use it during the winter months? A. Because I had other pastures at the other place.

"Q. You used it during the time of the year that it was suitable for pasture? A. Yes, sir.

"Q. Is that land suitable for anything else, Mr. Stone? A. Not much."

The witness (Stone) then indicated on a map how the fence was situated on the land with reference to where it was at the time of trial, and with reference to "the road." Said: The fence was straightened out a few years after he bought it; witness and Mr. Moore straightened the fence at that time. Mr. Moore said: "We got it (the line) straightened out, that I had mine now and he has his except a little over on the north side;" witness and Mr. Moore has kept up the fence there; during the time since witness bought the land he had claimed it; no one else ever claimed it that witness knows of; not before the oil field came in; points out on map the location of the fence with reference to the road.

On cross-examination: The evidence as to the use made of the land by Stone, as we view it, is not in conflict with the evidence by Stone. The evidence does not intimate an abandonment by Stone of his claim to the land. The only evidence we think necessary to consider in determining the continuous adverse possession and use of the land

is that in the wintertime the stock pastured on the land were transferred to other lands of Stone for the purpose of pasturage. We quote the questions and answers.

"Have you used it for that purpose (pasture for stock) all the time? Yes, except in the winter months; I never used it during the winter months for pasture.

"Why didn't you use it during the winter months? Because I had other pasture at the other place.

"You used it during the time of the year that it was suitable for pasture? Yes, sir.

"Is that land suitable for anything else, Mr. Stone? Not much."

The evidence does not show any use made of the land other than that of pasture for stock. The uncontroverted evidence shows such continuous use, except in the winter months, from 1916 until in 1931.

The uncontroverted evidence shows that appellant knew that appellee was on the land, knew that he had bought the land, helped him build the fence, and we think we could indulge in the presumption that appellant knew the use appellee was making of the land, and made no demand of appellee for the land until the land became valuable by the discovery of oil and gas.

In the case of Dunn v. Taylor et al., 102 Tex. 80, 113 S. W. 265, 268, our Supreme Court held that "when yearly crops are raised, it may be that actual occupancy of a tenant for the time between the harvesting of one crop and the preparation for another should not be held to be essential. In such cases the appearances on the land itself would probably show the purposes for which it is being used."

Here, where the appellant actually knew the use that was made of the land, assisted the appellee in putting up the fence inclosing the land, and no question of abandonment is in the case, we think it then becomes a question of law, and not of fact, for the jury to decide whether the use made of the land for some fourteen years was sufficient to show such as was necessary to give title by limitation, and that it was not error to instruct the jury.

We have found no reversible error, and the case is affirmed.